**In the Matter of William Guy MUNGER, Bankrupt.**

**Ernest J. POMBO, Appellant,**

**v.**

**Jack A. ULRICH, Trustee, Appellee.**

**No. 72-3041.**

United States Court of Appeals, Ninth Circuit.

April 4, 1974.

Alfred Nelson, Oakland, Cal., for appellant.

Rolla L. Garretson, Jr., Blewett, Garretson & Hachman, Stockton, Cal., for appellee.

Before CHAMBERS, CHOY, and GOODWIN, Circuit Judges.

ALFRED T. GOODWIN, Circuit Judge:

In a contest between the trustee in bankruptcy and the holder of an assignment of an agreement to assign farm subsidy payments "upon receipt" and several security agreements covering crops and proceeds, the referee in bankruptcy and the district court found for the trustee. We reverse.

Appellant claims the funds under either (1) security agreements executed between 1966 and 1969 between appellant's predecessor in interest, the Stockton Production Credit Association, and the bankrupt, Munger, or (2) a 1969 agreement in which Munger agreed to assign upon receipt any federal subsidy payments he might receive.

The two issues raised are (1) whether perfected security agreements held by the Association covering "all crops" and the "proceeds" thereof included within their term certain federal farm subsidy payments to which the debtor may become entitled; and (2) whether the 1969 agreement to assign upon receipt any subsidy payments is itself a security agreement giving appellant priority to such payments as against the trustee. Because we conclude that, under the facts of this case, the term "proceeds" as used in the security agreements includes the subsidy payments in dispute, we need not reach the second issue.

Munger, a sugar-beet farmer, gave as collateral for a loan several statutory security interests, covering his farm equipment, the crops to be grown on his land over the next five years, and the proceeds or products from these crops. The financing statements covering these security agreements satisfied California law. Three years later, desiring additional security, the Association asked Munger to sign an "Agreement to Assign Payments Due Producer Under Sugar Beet Production Adjustment Contract." Munger signed. He thereby agreed to assign to the Association any subsidy payments he might receive from the Department of Agriculture, either for harvesting or not harvesting his crop.

Prior to his bankruptcy, Munger abandoned a part of a crop and applied for abandonment payments. After his bankruptcy, he applied for other subsidy payments. Eventually, Munger became entitled to the funds here in dispute, and they were paid to the trustee. Meanwhile, the Association had assigned to appellant its interest in the payments.

Only the most basic description of property deemed to be collateral for a security interest under Division 9 of the California Commercial Code (hereinafter C.C.C.) is required by C.C.C. § 9402. The test of the sufficiency of the description is whether it would indicate to an interested third party the possible existence of prior encumbrances on the collateral. Biggins v. Southwest Bank, 490 F.2d 1304, 1307 (9th Cir. 1973). Using this standard, we conclude that the term "proceeds" used in the security agreements and financing statements includes

the federal subsidy payments in question here.

■ C.C.C. § 9306(1) defines proceeds broadly as including "whatever is received when collateral or proceeds is sold, exchanged, collected or otherwise disposed of." To us, such a definition indicates that the word "proceeds" is to be given a flexible and broad content. Furthermore, we assume that the security agreements were drafted with an awareness of the importance of the various forms of federal subsidy payments to the realities of financing a farming operation based upon sugar beets, and that an interested third party could also be expected to know that the crops described were sugar beets and entitled to various conditional subsidy payments under the Sugar Act of 1948. Some of these payments are closely connected with the sale of the sugar beets, being computed on the basis of the amount of sugar in the sugar beets grown on the farm and marketed, and paid to the farmer by the Department of Agriculture in addition to any payment from the purchaser. 7 U.S.C. §§ 1131, 1132. These payments would be "proceeds" under the most grudging interpretation of the security agreement. The other payments are "abandonment payments" based upon the acreage abandoned because of disease. Such payments depend upon the size of the subsidy pool available in a given year and locality. 7 U.S.C. §§ 1131, 1133. Although resembling insurance payments, these subsidy payments flow not from private contract between the debtor and a third party[1] but rather from a government program designed to protect both the United States sugar industry and the welfare of sugar producers.[2] Abandonment payments, like the subsidy payments based on sugar content, are an integral part of the sugar-beet farming business and, when received, are within a broad reading of "proceeds." Not to include such payments within the term "proceeds" would be to raise distinctions of form over the realities underlying this financing transaction, a result contrary to the intent of the Uniform Commercial Code. *See* Uniform Commercial Code § 9–110; C.C.C. § 9110; Biggins v. Southwest Bank, 490 F.2d at 1308.

The order of the district court upholding the decision of the referee in bankruptcy is reversed.

---

1. *Cf.* Quigley v. Caron, 247 A.2d 94 (Me. 1968); Universal C.I.T. Credit Corp. v. Prudential Investment Corp., 101 R.I. 287, 222 A.2d 571 (1966).

2. *See* 1947 U.S.Code Cong.Serv. 1685.