180 N.J. Super. 206 (1981)
434 A.2d 636
HERCULES INCORPORATED, PLAINTIFF,
v.
GENERAL MAGNETIC TAPE CO., ET AL., DEFENDANTS. UNITED STATES OF AMERICA, CLAIMANT-APPELLANT,
v.
COMMERCIAL TRADING COMPANY, CLAIMANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 10, 1981.
Decided August 4, 1981.
*207 Before Judges BOTTER, KING and McELROY.
Kristina E. Harrigan, Attorney, Tax Division, Department of Justice, admitted pro hac vice, argued the cause for appellant (M. Carr Ferguson, Assistant Attorney General, attorney; Robert J. Del Tufo, United States Attorney, of counsel; Gilbert E. Andrews, Ann B. Durney and Kristina E. Harrigan, attorneys, Tax Division, on the brief).
Robert C. Epstein argued the cause for respondent (Hannoch, Weisman, Stern, Besser, Berkowitz & Kinney, attorneys.
The opinion of the court was delivered by BOTTER, P.J.A.D.
The Federal Government (Government) appeals from a holding that its lien for unpaid taxes and moneys owed by the insolvent General Magnetic Tape Co., Inc. (GMT) was subordinate to the perfected security interest held by Commercial Trading Co., Inc. (Commercial) in a $36,857.52 fund of "custom duty rebates." GMT was entitled to these rebates or drawbacks for all but 1% of custom duties paid on certain imported goods which were used in the manufacture of products that were in turn exported to a foreign country. 19 U.S.C.A. § 1313(a).
In August 1976, to secure advances to GMT of approximately $350,000, Commercial filed a financing statement covering GMT's present and future accounts, contract rights, equipment *208 and inventory, and the "products" and "proceeds" of this collateral. In August and September 1977 the Government filed notices of tax liens totalling $47,624.42 for taxes and moneys owed by GMT. In December 1977 GMT was adjudicated insolvent and a receiver was appointed. Thereafter, Commercial submitted its proof of claim alleging secured indebtedness in excess of $350,000, and the Government also pressed its claim. The issue is whether Commercial's security interest attached to the custom duty rebates. The Government concedes that Commercial's security interest would prevail over the Government's lien to the extent that Commercial's claim was based on "collateral GMT acquired before the 46th day after filing the notice of tax lien." 26 U.S.C.A. § 6323(a); see Continental Finance, Inc. v. Cambridge Lee Metal Co., Inc., 56 N.J. 148, 151-153 (1970). The federal statute defines a security interest which takes precedence over the federal lien as one which is protected by local law against a subsequent judgment lien arising out of an unsecured transaction. 26 U.S.C.A. § 6323(h).
19 U.S.C.A. § 1313(a) provides:
Upon the exportation of articles manufactured or produced in the United States with the use of imported merchandise, the full amount of the duties paid upon the merchandise so used shall be refunded as a drawback, less 1 per centum of such duties....
The Government contends that custom duty rebates are not property of the kind specified in Commercial's financing statement, specifically, that they are general intangibles and are neither "contract rights" nor the "proceeds" or "products" of the inventory of raw materials and finished products. Looking at Article 9 of the Uniform Commercial Code, N.J.S.A. 12A:9-101 et seq., the Government contends that the rebates do not fit the description of contract rights contained in N.J.S.A. 12A:9-106 because they are rights derived from a statute rather than a contract between the exporter and the United States. Nor are the refunds "proceeds" within the definition of N.J.S.A. 12A:9-306(1), the Government contends, because they do not represent consideration flowing from the recipient to whom the goods were sold or otherwise transferred. In fact the Government *209 says that the rebates "do not result from the sale, lease, exchange ... or other disposition of collateral," since the mere exporting of goods is not the equivalent of "disposition."
In the trial court Judge Lester rejected these contentions. He held that the rebates were contract rights within the contemplation of N.J.S.A. 12A:9-106, but if there is doubt as to this proposition, he held they were surely "proceeds" within the meaning of N.J.S.A. 12A:9-306. We agree with this latter holding. Indeed, the United States Supreme Court has held that the statutory right to the refund established "a contract that when [the goods were] exported the Government would refund, repay, pay back, this amount as a drawback to the importer." Campbell v. United States, 107 U.S. 407, 411, 2 S.Ct. 759, 763, 27 L.Ed. 592, 594 (1883); cf. Cudahy Bros. Co. v. LaBudde, 92 F.2d 937, 940 (7 Cir.1937), cert. den., 303 U.S. 659, 58 S.Ct. 763, 82 L.Ed. 1118 (1938). However, we need not pause to ponder whether the term "contract right" was used in this sense in the Uniform Commercial Code. For we agree with Judge Lester that the rebates constituted "proceeds," as the term is used in N.J.S.A. 12A:9-306.
N.J.S.A. 12A:9-306(3) provides, generally, that a creditor has a perfected security interest in the proceeds of collateral if the interest in the original collateral has been perfected. "`Proceeds' includes whatever is received when collateral or proceeds is sold, exchanged, collected or otherwise disposed of." N.J.S.A. 12A:9-306(1). Even if we assume the unlikely event that GMT exported its finished products for a reason other than a sale or exchange, the transfer is covered by the phrase "or otherwise disposed of." In a sense, the value added to the imported raw material by the duty charged on entry of the goods to this country is represented by the rebate fund composed of value withdrawn from the goods when they are exported. Thus, the rebate fund represents a partial exchange for the goods when they are exported in their manufactured state. For this reason it is logical to continue the creditor's security in that portion of the goods represented by the value of the custom duty temporarily *210 retained. See In re Munger, 495 F.2d 511 (9 Cir.1974), which held that government subsidies for abandoned farm acreage are "proceeds" within the definition of the Uniform Commercial Code.
The Government concedes that insurance for destroyed goods would be proceeds. It argues, however, that insurance funds are substitutes for the goods and that subsidies for the abandoned or sold crops in Munger are similar. We find these distinctions unpersuasive. The farm subsidy for sold crops comes from the government, not the purchaser; they are supplementary payments based on the amount of sugar in the sugar beets grown on the farm and marketed. 495 F.2d at 513. The other payments were based on acreage abandoned because of disease. Id. In either instance it is not clear that the payments replaced the crops or a portion thereof. In the case at hand the duty initially paid represents a cost of importing material which the Government has agreed to refund after the material is transformed by manufacture and exported again. In our view, the costs of the product represented by the jury is withdrawn once the product has been exported. The retained custom duties represent a portion of the exported product's value and are the proceeds thereof much as the subsidies in Munger.
Affirmed.