[No. F003064. Fifth Dist. Feb. 7, 1985.]

JOHANSON TRANSPORTATION SERVICE, Plaintiff and Appellant, v. RICH PIK'D RITE, INC., et al., Defendants and Respondents.

**[Opinion certified for partial publication.†]**

---

†Parts II and III are not published as they do not meet the standards for publication contained in rule 976(b), California Rules of Court.

584

COUNSEL

Andrews, Andrews, Thaxter & Jones and Franklin P. Jones for Plaintiff and Appellant.

Brobeck, Phleger & Harrison, Frederick D. Holden, Jr., Rebecca J. Foust, Skjerven, Morrill, MacPherson & Drucker and Vincent O'Gara for Defendants and Respondents.

OPINION

**MARTIN, J.**—Plaintiff Johanson Transportation Service, a truck transportation broker, filed a complaint against Jimmy Grizzard Sales, Inc., Wells

Fargo Bank, N.A., and Rich Pik'd Rite, Inc., to recover $36,194.20 in freight charges. Plaintiff had advanced the charges to truckers who hauled strawberries shipped by defendant Grizzard to the east coast. Following the fruit shipments, the fruit buyers issued single checks to Grizzard that included payment for both the fruit and freight. Grizzard deposited the checks in a deposit account at Wells Fargo's Ventura branch. Wells Fargo and Rich Pik'd Rite both claimed a security interest in the deposit account. At plaintiff's request, default was entered against defendant Jimmy Grizzard Sales, Inc. on April 20, 1983. Defendants Wells Fargo and Rich Pik'd Rite both moved for summary judgment. On June 21, 1983, the superior court granted both motions for summary judgment and on July 26, 1983, judgment was entered in favor of both defendants. Plaintiff filed a timely notice of appeal.

## STATEMENT OF FACTS

Plaintiff is a truck transportation broker with its principal place of business in Fresno, California. Defendant Jimmy Grizzard Sales, Inc. (Grizzard) is a former grower and shipper of strawberries with its principal place of business at Oxnard, California. Defendant Rich Pik'd Rite, a Delaware corporation, is a processor of fresh fruits. Defendant Wells Fargo is a national bank.

On September 4, 1981, Grizzard entered into a credit and security agreement with defendants Wells Fargo and Rich Pik'd Rite. The agreement provided for establishment of a deposit account at Wells Fargo's Ventura branch. The agreement required Grizzard to deposit all of the proceeds from the sale of its 1981-1982 strawberry crop in the account and precluded Grizzard from drawing on the account. All deposits to that account were to be used to reduce Grizzard's indebtedness to the defendants.[1]

The credit and security agreement granted to Wells Fargo and Rich Pik'd Rite security interests in the following collateral:

"A. All strawberries and strawberry plants, growing on, to be grown on, or harvested from the real property described in Exhibit 4 hereto; and all strawberry packing boxes, strawberry trademarks and trade names; and all accounts receivable, rights to payment, contract rights, and chattel paper constituting proceeds of the foregoing;

---

[1]The security agreement also provided for establishment of a demand deposit account (the "strawberry account") on which Grizzard was authorized to draw under certain conditions.

"B. All licenses, guaranties, warranties, management agreements, marketing or sales agreements, escrow contracts, indemnity agreements, service agreements, maintenance agreements, insurance policies, joint venture and partnership interests, and other contracts of every kind, warehouse and other receipts, bills of sale, bills of lading, and other documents of every kind (whether or not negotiable), to the extent they relate to the Collateral described in subsection A of this Section 2.1;

"C. All money and property heretofore, now, or hereafter deposited in or to the Strawberry Account or the Deposit Account;

"D. All of Borrower's interest in and right to any proceeds from Borrower's litigation against Western Kraft, a division of Willamette Industries, Inc., now pending in the United States Bankruptcy Court for the Central District of California as adversary proceeding number LA-80-1561 CA ('Western Kraft Litigation');

"E. All cash, non-cash receipts, accounts, chattel paper, instruments, general intangibles, and rights to payment of every kind now or at any time hereafter arising out of Borrower's handling, cooling, packing or shipping of berries grown by others; and

"F. All proceeds and products of or from the aforementioned Collateral (and any proceeds of any proceeds and any products of any products) now existing or hereafter arising."

The description of the collateral on Grizzard's financing statement (form UCC-1) was the same as that set forth in the agreement, except that paragraph C was omitted from the financing statement.

Between May 5 and May 19, 1982, Grizzard contacted plaintiff to arrange trucking services for the transportation of 12 different loads of strawberries from Grizzard's business in Oxnard to points on the east coast. Plaintiff advanced the total amount of freight charges to the truckers carrying the 12 loads. The freight charges amounted to $36,194.20, which included $2,660.44 in brokerage fees payable to plaintiff. The strawberries were sold on a "sold delivered" or "delivered price" basis. This meant the freight charges were included in the total cost to the fruit buyer and not charged separately. With respect to each sale, Grizzard received from the buyers one check representing the purchase price and freight charges for the strawberries. Grizzard deposited all checks received for the strawberries in the deposit account at Wells Fargo.

Grizzard failed to repay the funds plaintiff advanced for freight charges. Following written demand on Wells Fargo and Rich Pik'd Rite, plaintiff filed a complaint stating three causes of action against Grizzard, Wells Fargo, and Rich Pik'd Rite. In its first cause of action, plaintiff alleged breach of contract by Grizzard only. In its second and third causes of action, plaintiff alleged unjust enrichment of and conversion by both Wells Fargo and Rich Pik'd Rite as defendants.

On June 21, 1983, the lower court heard the arguments of counsel and granted defendants' motions for summary judgment, finding no triable issue of fact.

## DISCUSSION

### I. WERE THE PAYMENTS FOR FREIGHT CHARGES SUBJECT TO THE SECURITY INTERESTS CLAIMED BY RESPONDENTS?

Plaintiff contends defendants may not retain the $36,194.20 in freight charges because those charges were not "proceeds" subject to the defendants' security interests. Thus, by inference, plaintiff claims there were triable issues of fact and summary judgment was improper.

■ The purpose of a summary judgment motion is to determine if there are any triable issues of material fact, or whether the moving party is entitled to judgment as a matter of law.

■ A summary judgment entered under Code of Civil Procedure section 437c is an appealable judgment as in other cases. (Code Civ. Proc., § 437c, subd. (*l*).) ■ General rules relating to the scope of appellate review apply to appellate review of summary judgment, with two major exceptions. First, an argument or theory will generally not be considered if raised for the first time on appeal, unless the question is one of law to be applied to undisputed fact. Thus, possible theories not fully developed or factually presented to the trial court cannot create a "triable issue" on appeal. Second, issues raised and then abandoned in the trial court also cannot be considered on appeal. (2 Cal. Civil Procedure Before Trial (Cont.Ed.Bar 1978) § 29.86, p. 319.) ■ An appellate court will uphold a summary judgment when the record establishes there is no cause of action. In considering the grant of summary judgment, the reviewing court is not confined to the sufficiency of the stated reasons. The validity of the ruling is reviewable and not the reasons therefor. ■ A motion for summary judgment necessarily includes a test of the sufficiency of the complaint and as such is

in legal effect a motion for judgment on the pleadings. (*Barnett* v. *Delta Lines, Inc.* (1982) 137 Cal.App.3d 674, 682 [187 Cal.Rptr. 219].)

In the instant case, plaintiff contends the trial court improperly granted summary judgment by erroneously finding the freight charges subject to the security interests claimed by defendants. Plaintiff asserts three reasons for the trial court's error: (1) The description of collateral in defendants' UCC-1 financing statements did not include the freight charges; (2) defendants had no security interests in the Wells Fargo deposit account itself; and (3) the freight payments are not "proceeds" within the meaning of the California Uniform Commercial Code.[2] We address each contention in turn.

With respect to the description of collateral, plaintiff contends Grizzard's obligations to defendants must be determined by examining the September 4, 1981, credit and security agreement and the UCC-1 financing statements filed to perfect the claimed security interest. Pursuant to section 2.1, paragraph C of the credit and security agreement, Grizzard granted defendants a security interest in "all money and property heretofore, now, or hereafter deposited in or to the Strawberry Account or the Deposit Account." Plaintiff notes the description of collateral in the financing statement omits this paragraph. Plaintiff contends a more restrictive description of collateral in a financing statement controls over a broader description contained in a security agreement when the claims or rights of third parties are at issue. (*Matter of Katz* (5th Cir. 1977) 563 F.2d 766, 768-769.) Plaintiff concludes defendants may not rely on paragraph C of the credit and security agreement to subject the freight charges to their security interests "merely because the payments for the freight charges found their way into the deposit account."

Section 2.1, paragraph E of the agreement (which is almost identical to item No. six, paragraph D on exhibit 1 to the UCC-1 financing statement) describes the following claimed collateral: "E. All cash, non-cash receipts, accounts, chattel paper, instruments, general intangibles, and rights to payment of every kind now or at any time hereafter arising out of Borrower's handling, cooling, packing or shipping of berries grown by others; . . ."

---

[2] In its reply brief, plaintiff also contends the deposit account was not a "deposit account" within the meaning of California Uniform Commercial Code section 9105, subdivision (1)(e). That section defines a "deposit account" as "a demand, time, savings, passbook, or like account maintained with a bank . . . other than an account evidenced by a negotiable certificate of deposit." Plaintiff contends the deposit account was not a time, savings or passbook account and was not a demand account because the funds were not subject to immediate withdrawal by Grizzard. Plaintiff's theory was not presented to the trial court and may not be considered for the first time on appeal. (*G & D Holland Construction Co.* v. *City of Marysville* (1970) 12 Cal.App.3d 989, 997 [91 Cal.Rptr. 227].)

Plaintiff contends defendants may not rely on this provision because there was no evidence presented at the lower court hearing to show berries were grown by others than Grizzard. Plaintiff further notes section 2.1, paragraphs B and D of the agreement (item No. six, paragraphs B and C of the financing statements) relate to commercial paper and proceeds from pending litigation and do not expressly include the strawberry buyers' checks to Grizzard. Plaintiff contends defendants must rely, if at all, on section 2.1, paragraphs A and F (item No. six, paragraphs A and E of the financing statements) which describe strawberry plants, strawberries, and their proceeds. Plaintiff concludes, *without citing authority,* "as a matter of reasonable construction, proceeds must relate to that portion of the checks that represents payment for the berries, but not for the freight."

With respect to a security interest in the deposit account itself, California Uniform Commercial Code section 9105, subdivision (1)(e) provides: "'Deposit account' means a demand, time, savings, passbook or like account maintained with a bank, savings and loan association, credit union or like organization, other than an account evidenced by a negotiable certificate of deposit . . . ."

Plaintiff contends it is clear the deposit account itself does not constitute collateral, citing the commissioner's note to Uniform Commercial Code section 9-105. That note states: "'Deposit account' is a type of collateral excluded from this Article under Section 9-104(*1*), except when it constitutes proceeds of other collateral under Section 9-306." (*Ibid.*) Plaintiff ignores the fact that California has not adopted subdivision (*1*) to Uniform Commercial Code section 9-104. Rather, California has adopted a different subdivision (*l*) which excludes any security interest created by assignment of benefits of any public construction contract under the Improvement Act of 1911. (Cal. U. Com. Code, § 9104, subd. (*l*).) Plaintiff's argument based on the Uniform Commercial Code must fail.

Finally, plaintiff contends the freight payments are not "proceeds" within the meaning of the California Uniform Commercial Code. California Uniform Commercial Code section 9306[3] provides: "(1) 'Proceeds' includes whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds. Insurance payable by reason of loss or damage to the collateral is proceeds, except to the extent that it is payable to a person other than a party to the security agreement. Money, checks, deposit accounts, and the like are 'cash proceeds.' All other proceeds are 'noncash proceeds.'"

---

[3]All statutory references are to the California Uniform Commercial Code unless otherwise indicated.

Plaintiff contends Grizzard's initial collateral was the strawberries, the 12 checks paid to Grizzard included both freight charges and the cost of the strawberries, and defendants are therefore entitled to proceeds of the strawberries but not to the freight monies. Plaintiff concedes the term "proceeds" is to be construed broadly under California law. (*In the Matter of Munger* (9th Cir. 1974) 495 F.2d 511, 513.) However, plaintiff contends the most reasonable interpretation of the term is that proceeds consist of what is received for collateral. Plaintiff maintains the only collateral available to defendants on the 12 shipments of strawberries to the east coast consists of payments for the berries. As a matter of reasonable construction, plaintiff argues the proceeds should not include the portions of the checks representing freight previously paid for by plaintiff. Plaintiff would have Grizzard designated a trustee with respect to the 12 checks including the $36,194.20 in freight, with the balance as payments for strawberries to which defendants "may have a just claim." Plaintiff maintains Grizzard could grant a security interest only in what it owned or what it was entitled to receive and keep. Since Grizzard did not have the right to retain monies for the freight services, plaintiff contends it could not grant a security interest in those portions of the checks representing freight charges.

Upon analysis, plaintiff's argument must fail on all three points asserted. ■ First, failure to include paragraph C of the credit and security agreement in the financing statement collateral description does not limit defendants' security interests in the crop proceeds. The collateral described on the financing statement expressly included "all strawberries and strawberry plants" and "all proceeds and products of or from the aforementioned collateral (and any proceeds of any proceeds and any products of any products) now existing or hereafter arising."

■ Defendants maintain the "proceeds" of a product include payment for all of the various economic subcomponents of the product, including raw materials and transportation. This argument comports with the language of section 9306, subdivision (1), and is consistent with case law defining or interpreting the term. In *In the Matter of Munger, supra,* 495 F.2d 511, at page 513, the court stated: "C.C.C. [California Commercial Code] § 9306(1) defines proceeds broadly as including 'whatever is received when collateral or proceeds is sold, exchanged, *collected* or otherwise disposed of.' To us, such a definition indicates that the word 'proceeds' is to be given a flexible and broad content." (Italics added.) To us it seems illogical to agree that the cost of the seed, fertilizer, other agrichemicals, water, picking, packaging, etc., are included within the term "proceeds" but the cost of transporting the product to market is not. Such an argument exalts form

over substance and should be rejected. "Proceeds" includes all economic components that go into the total amount received for the product.

■ Moreover, plaintiff's argument concerning description of collateral ignores California Uniform Commercial Code section 9302, subdivision (1)(g). That section provides a financing statement need not be filed to perfect a security interest in a deposit account. ". . . Such a security interest is perfected:

"(i) As to a deposit account maintained with the secured party when the security agreement is executed;

"(ii) As to a deposit account not described in subparagraph (i) when notice thereof is given in writing to the organization with whom the deposit account is maintained." Here, defendants' security interests in the deposit account were perfected upon execution of the credit and security agreement. Omission of paragraph C from the financing statement exhibit did not restrict their interests in the collateral.

Plaintiff's argument concerning inapplicability of article nine (governing secured transactions) to "deposit accounts" is also erroneous. ■ Under the Uniform Commercial Code, a deposit account is excluded from article nine requirements under section 9-104, subdivision (1) except when the account constitutes proceeds of other collateral under section 9-306. The California Uniform Commercial Code does not draw this distinction. The California Code does not expressly exclude deposit accounts from coverage of article nine. (See Cal. U. Com. Code, §§ 9104, 9105, 9306.)

■ We conclude that payments for freight charges are clearly "proceeds" within the meaning of the code. "Proceeds" includes *whatever* is received upon the sale, exchange, collection or other disposition of collateral or proceeds. (Cal. U. Com. Code, § 9306, subd. (1).) As defendant Rich Pik'd Rite notes, plaintiff's construction would "have this court improperly limit the definition of 'proceeds' to only those portions of checks resulting from the efforts of a particular creditor." Such a construction is rejected by the express language of the code. The freight charges paid by purchasers of the strawberries were "proceeds" within the meaning of the Commercial Code and were included within the security interests claimed by defendants.

II. Did Respondents' Retention of the Payments for Freight Charges Constitute Unjust Enrichment?*

. . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Franson, Acting P. J., and Hanson (P. D.), J., concurred.

---

*See footnote, *ante*, page 583.