[No. F021082. Fifth Dist. Feb. 6, 1995.]

MICHAEL IVERSON, a Minor, etc., Plaintiff and Appellant, v. MUROC UNIFIED SCHOOL DISTRICT et al., Defendants and Respondents.

## COUNSEL

Brian E. Reed for Plaintiff and Appellant.

Robinson, Palmer & Stanton and William D. Palmer for Defendants and Respondents

## OPINION

**STONE (W. A.), Acting P. J.**—In this case we address the question whether Government Code section 831.7,[1] which provides qualified immunity to public entities and public employees for injuries sustained by a person during "hazardous recreational activity," immunizes a school district from liability for injuries sustained by a minor student during a soccer match conducted as part of a junior high school physical education class. The superior court concluded immunity attached as a matter of law and granted the school district's motion for summary judgment on the minor's complaint for negligence. Michael Iverson, the minor, by and through his guardian ad litem, appeals from the summary judgment granted in favor of Muroc Unified School District et al. (the District).

The parties agree that 14-year-old Michael suffered a double fracture of his right forearm while engaged in a soccer match on a school field. The match occurred during an eighth grade physical education class conducted during regular school hours. As described by Michael, at the time of his injury he had just kicked the ball down field and was lying on his left side. He was "slide tackled" by another student who slid into him and kicked his arm. In his action against the District and its physical education instructor, Leroy Matthews, Michael alleged, inter alia, the District negligently instructed and supervised its students engaged in the class.

In its answer the District claimed Michael "voluntarily exposed himself to all of the matters and things alleged" in the complaint and thereby assumed the risk incident to such activities, and that it was immune from liability.

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

The District moved for summary judgment. It argued section 831.7 was dispositive "because plaintiff was participating in a hazardous recreational activity in which he voluntarily placed himself at risk."[2] The District pointed to Michael's deposition testimony in which he acknowledged he played league soccer in the lower grades prior to his injury, and after he recovered from the fractured arm he again played soccer in physical education class. The District argued "it is undisputed that plaintiff voluntarily engaged in the soccer game in which he was injured. Likewise, although physical education courses routinely include hazardous recreational sporting activities, plaintiff's parents allowed him to take such courses." The District maintained soccer was a "hazardous recreational activity" that fell within the description of a "body contact sport" as defined by section 831.7, subdivision (b)(3), and it was statutorily immune from liability as a matter of law.

The court granted the motion, reasoning in part:

"The complaint, read in light of plaintiffs' opposition to this motion, alleges a cause of action for 'negligent supervision.' Thus, the issue this motion raises is not whether there is a triable issue of material fact regarding that theory, but, rather, whether given that theory there is such a factual issue regarding immunity under Government Code section 831.7.

"Government Code section 831.7 provides a public entity immunity against liability for negligence when brought by anyone who 'participates in a hazardous recreational activity . . . who knew or reasonably should have known that the hazardous recreational activity created a substantial risk of injury . . . and [who] was voluntarily in the place of risk, or having the ability to do so failed to leave[.]' . . .

"Soccer, unquestionably, is a hazardous activity within the meaning of section 831.7: . . . Here plaintiff, an experienced player, chose to participate in soccer, a hazardous activity, knowing from that experience he could

---

[2]In part section 831.7 provides:

"(a) Neither a public entity nor a public employee is liable to *any person who participates in a hazardous recreational activity*, including any person who assists the participant, *or to any spectator who knew or reasonably should have known that the hazardous recreational activity created a substantial risk of injury to himself . . . and was voluntarily in the place of risk*, or having the ability to do so failed to leave, for any damage or injury to . . . persons arising out of that hazardous recreational activity.

"(b) As used in this section, 'hazardous recreational activity' means a recreational activity conducted on property of a public entity which creates a substantial (as distinguished from a minor, trivial, or insignificant) risk of injury to a participant or a spectator.

" 'Hazardous recreational activity' also means:

" . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(3) . . . body contact sports (i.e., sports in which it is reasonably foreseeable that there will be rough bodily contact with one or more participants) . . . ." (Italics added.)

be injured by body contact. The facts, as made out in the record submitted, bring the matter within the immunity that section 831.7 affords."

DISCUSSION

I. *What Does "Voluntarily in the Place of Risk" Modify?*

██ Michael argues subdivision (a) applies only when a plaintiff places himself *voluntarily* in the place of risk. He maintains at the time of his injury he was engaged in compulsory education in a junior high school physical education class he was compelled to attend.

In a sea change argument, the District now claims "voluntarily in the place of risk" modifies "spectator" only in the language of the statute, *not* "any person who participates in a hazardous recreational activity[.]" (See emphasized portion of § 831.7, subd. (a), fn. 2, *ante*.) And even if "voluntarily in the place of risk" does pertain to a participant, the District argues there is no material issue of fact involving whether Michael's participation was voluntary.

We note from the history of this motion, the first part of the District's argument is *not* the issue the District presented to the trial court in its moving or responsive papers or at the hearing; neither is it the issue to which Michael responded. Clearly, the trial court interpreted " 'and [who] was voluntarily in the place of risk, or having the ability to do so failed to leave' " to apply to a participant. The court stated in its ruling, "Here plaintiff, an experienced player, chose to participate in soccer, a hazardous activity, knowing from that experience he could be injured by body contact. . . ."

As a general rule an appellate court reviews only issues raised in the trial court. (*Johanson Transportation Service* v. *Rich Pik'd Rite, Inc.* (1985) 164 Cal.App.3d 583, 588 [210 Cal.Rptr. 433] ["an argument or theory will generally not be considered if raised for the first time on appeal, unless the question is one of law to be applied to undisputed fact. Thus, possible theories not fully developed or factually presented to the trial court cannot create a 'triable issue' on appeal. . . . [Citation.]"].)

On appeal from a summary judgment, however, an appellate court reaches an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c);

*Saldana* v. *Globe-Weis Systems Co.* (1991) 233 Cal.App.3d 1505, 1513-1515 [285 Cal.Rptr. 385]; *California Aviation, Inc.* v. *Leeds* (1991) 233 Cal.App.3d 724, 730-731 [284 Cal.Rptr. 687].) We proceed with an analysis of section 831.7 in the context of the stated facts and the District's argument.

"The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. [Citations.]" (*People* v. *Pieters* (1991) 52 Cal.3d 894, 898 [276 Cal.Rptr. 918, 802 P.2d 420]; *T. M. Cobb Co.* v. *Superior Court* (1984) 36 Cal.3d 273, 277 [204 Cal.Rptr. 143, 682 P.2d 338].) In interpreting this legislation, we turn first to the words of section 831.7. (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299]; *Tracy* v. *Municipal Court* (1978) 22 Cal.3d 760, 764 [150 Cal.Rptr. 785, 587 P.2d 227].)

A test for determining whether a statute is ambiguous is whether it is capable of being understood by reasonably well-informed persons in two or more different senses. (*Ervin* v. *City of Kenosha* (1991) 159 Wis.2d 464 [464 N.W.2d 654, 657-658].) The District's evolving argument alone proves the pertinent portion of section 831.7, subdivision (a) is susceptible to more than one interpretation. Certainly the trial court thought "voluntarily" modified "participant." Either of the contrary interpretations put forward by the District is arguably correct. Therefore, we examine the legislative history of the statute in order to determine legislative intent. (*In re Lance W.* (1985) 37 Cal.3d 873, 886 [210 Cal.Rptr. 631, 694 P.2d 744]; *DeVito* v. *State of California* (1988) 202 Cal.App.3d 264, 270 [248 Cal.Rptr. 330].)

Some background on section 831.7 (Assem. Bill No. 555 (1983-1984 Reg. Sess.)) is helpful. At the time Assembly Bill No. 555 came before the Legislature in 1983, existing law provided that property owners owed no duty to keep the land safe or to warn of dangerous conditions when people were permitted to enter or use the land for recreation. However, the owner was subject to liability for willful or malicious failure to guard or warn against a dangerous condition; injury where permission was given for consideration; or injury incurred by a person expressly invited to enter the land. (Civ. Code, § 846.) Appellate courts were divided on the issue of whether the immunity available to a landowner under Civil Code section 846 was applicable to a public entity landowner.[3]

Assembly Bill No. 555, patterned after Civil Code section 846, sought to give a public entity and its employees specific qualified immunity from

---

[3]During the bill's journey through the Legislature the California Supreme Court decided *Delta Farms Reclamation Dist.* v. *Superior Court* (1983) 33 Cal.3d 699, 704-709 [190 Cal.Rptr. 494, 660 P.2d 1168], in which it held, inter alia, public entities were not protected by Civil Code section 846.

liability for injuries due to defined "hazardous recreational activity" on public property. The source of the bill was the Oakland East Bay Regional Park District; it received support from numerous park and recreation districts, municipalities and counties. These public entities desired to keep their land open to recreational users but sought some protection against increasing numbers of personal injury actions by public property users engaging in such activities as hang gliding and rock climbing, and attendant escalating insurance rates.

Pertinent to the issue raised, the analysis presented to the Senate Judiciary Committee noted the following as among the features of the proposed legislation:

"4.   *Limited liability to participant*

"Except as provided, (e.g., gross negligence, failure to warn), *the public entity would not be liable to any person who participated in a hazardous recreational activity, including any person who assisted that participant,* for any damages or injury to property or person arising out of that hazardous activity.

"The primary purpose of this bill is to prevent the hang glider or rock climber from suing a public entity when that person injured himself in the course of the activity.

"5.   *Limited liability to spectator*

"Except as provided, *this bill would immunize a public entity from liability to any 'spectator.' That term is described to mean any person who knew or reasonably should have known that the hazardous recreational activity created a substantial risk of injury to himself and was voluntarily in the place of risk, or failed to leave though he had the ability to do so.* The purpose of this provision is to protect the public entity from lawsuits by a spectator who was injured while attending a motorcycle race or car rally on public property." (Italics in text added except for "substantial.")

■   Punctuation is a frequent source of ambiguity. (1A Sutherland, Statutory Construction (5th ed. 1984) Legal Commentary, Punctuation, p. 656.) Punctuation of a statute, while not of controlling importance, is part of the statute and should be considered in its interpretation in an attempt to give the statute the construction intended by the drafter and to seek and follow the intent of the Legislature. (*People* v. *Henson* (1991) 231 Cal.App.3d 172, 176-177 [282 Cal.Rptr. 222].)

"As stated by the California Supreme Court, '[w]here a statute is theoretically capable of more than one construction we choose that which most comports with the intent of the Legislature. [Citations.]' (*California Mfrs. Assn.* v. *Public Utilities Com.* (1979) 24 Cal.3d 836, 844 . . . .) As stated in *California Mfrs. Assn.*, 'the legislative history of the statute and the wider historical circumstances of its enactment are legitimate and valuable aids in divining the statutory purpose. . . .' (*Ibid.*)" (*People* v. *Henson, supra,* 231 Cal.App.3d at p. 177.)

When the punctuation discloses a proper legislative intent or conveys a clear meaning courts should give weight to it as evidence. (*Webster* v. *Superior Court* (1988) 46 Cal.3d 338, 344 [250 Cal.Rptr. 268, 758 P.2d 596]; 2A Sutherland, Statutory Construction (5th ed. 1992 rev.) § 47.15, p. 179.)

▇▇▇ The punctuation of the statute comports with the apparent purpose and intention of the Legislature that the reference to one who was "voluntarily in the place of risk, or failed to leave though he had the ability to do so," was meant to modify "spectator" only. (§ 831.7, subd. (a).) But that does not end our analysis.

### II. *Was the Minor Injured During a Hazardous "Recreational" Activity?*

From our review of the legislative materials we have received from the California State Archives and law library, including the subsequent history of Assembly Bill No. 555 as it moved through the Legislature, it is clear the bill is aimed at "recreational" area users. As stated in the report of the Senate Committee on Judiciary, "The purpose of this bill is to protect public entities from lawsuits when recreational users engage in dangerous activities on public property and are injured." There is no indication in the legislative history that this bill was meant to apply to school children injured during a physical education class conducted on school grounds. The history of the bill makes no reference to school children, school playgrounds, or physical education classes.

We find cases dealing with section 831.7 and related statutes to be of little assistance; they deal with *discretionary* recreational activity of a hazardous variety and are readily distinguishable from the instant facts. (E.g., *Decker* v. *City of Imperial Beach* (1989) 209 Cal.App.3d 349, 355 [257 Cal.Rptr. 356] [surfboard of plaintiff's son became entangled in tether of submerged lobster trap and son drowned while city pursued an antiquated rescue option and precluded volunteers from intervening; Court of Appeal affirmed summary judgment for city holding section 831.7 precludes liability for any negligently inflicted injuries while rescuing a person engaged in a hazardous

recreational activity]; *DeVito* v. *State of California, supra*, 202 Cal.App.3d at p. 271 [hiker swung from fire hose hung over tree limb in mountain canyon, lost her grip and fell down steep slope sustaining injuries; appellate court affirmed dismissal of complaint on demurrer concluding no exception to nonliability under § 831.7, subd. (c)(1) on these facts—one who swings over a steep slope assumes an inherent part of the activity is a possible fall from a greater height than the person's starting point on a ledge]; cf. *City of Santa Cruz* v. *Superior Court* (1988) 198 Cal.App.3d 999, 1007 [244 Cal.Rptr. 105] [appellate court affirmed summary judgment for city stating as a matter of law that gross negligence did not provide exception to nonliability under Health & Saf. Code § 1799.106 where facts showed lifeguard, who was attending to another problem, did not respond and offer aid for about 20 minutes to man who dove into shallow river and was rendered quadriplegic].)

The case relied upon by the superior court involving hazardous recreational activity on school grounds in the context of section 831.7 is *Yarber* v. *Oakland Unified School Dist.* (1992) 4 Cal.App.4th 1516 [6 Cal.Rptr.2d 437]. But it is also distinguishable. Yarber, an adult, was injured during an "after hours" basketball game in a school gymnasium that had been rented from the school district. (*Yarber, supra*, 4 Cal.App.4th at p. 1518.) Yarber was hit while shooting the ball and propelled into an unpadded concrete wall some four feet behind the line. The appellate court reversed a judgment in favor of Yarber and directed judgment be entered in favor of the district. (*Id.* at p. 1518.) The court observed the unpadded concrete wall was known to Yarber, who had played basketball in the building previously; it was not a " 'hidden trap.' " (*Id.* at p. 1520.) The court concluded as a matter of law that a full court basketball game was a " 'body contact sport' " as described in section 831.7, subdivision (b)(3), and as such was a "hazardous recreational activity" within the meaning of the statute, rendering the district immune. (*Ibid.*)

In a recent case an appellate court reached a different result. A student participating in after school hours, supervised, off-season gymnastic practice in the school gym was seriously injured in a fall. In *Acosta* v. *Los Angeles Unified School Dist.* (1995) 31 Cal.App.4th 471 [37 Cal.Rptr.2d 171], the court held public entity immunity under section 831.7 did not apply in the minor's suit against the school district. The *Acosta* court concluded the issue of immunity under section 831.7 should not have been submitted to the jury "because, as a matter of law, 'hazardous recreational activities' do not include school-sponsored extracurricular athletic activities under the supervision of school personnel." (31 Cal.App.4th at p. 476.)

*Acosta* is also distinguishable as it dealt with school sponsored extracurricular athletic activities rather than a school hours physical education class.

And in another school ground case arising *before* the enactment of section 831.7, the court in *Bartell* v. *Palos Verdes Peninsula Sch. Dist.* (1978) 83 Cal.App.3d 492, 496-498 [147 Cal.Rptr. 898], upheld the dismissal of a complaint following a successful demurrer by the school district. The court held the district was not liable for the fatal injuries sustained by a minor "after school hours" in a dangerous skateboard game held in a schoolyard absent any defect in the school property constituting a dangerous condition (§ 835). Nor could plaintiffs establish a duty of care as their complaint contained no allegation their deceased son "was on school grounds in connection with normal school attendance . . . . Rather, he was apparently there after school hours on his own volition and for his own amusement. . . ." (83 Cal.App.3d at p. 499.)

*Bartell* is also distinguishable on its facts. The hazardous activity occurred "after school hours," at a time when supervision was not mandated and the activity was not sanctioned by the district.

A body contact sport incorporated into a schooltime physical education class is not a "recreational" activity within the meaning of section 831.7, subdivision (a)—hazardous as that activity may be in the abstract. We hold, as a matter of law, that section 831.7 is inapplicable in the context of the injuries incurred here—injuries sustained on school grounds during a physical education class required by the school and conducted during school hours. (*Yarber* v. *Oakland Unified School Dist.*, *supra*, 4 Cal.App.4th at p. 1519 [where facts undisputed, the issue of whether a plaintiff was engaged in a "recreational hazardous activity" is a question of law for this court].)

Apart from this conclusion drawn from the specific legislative intent we have examined and pertinent case law, it appears from other extant law the District cannot prevail on the basis of section 831.7.

As observed in *Acosta* v. *Los Angeles Unified School Dist.*, *supra*, 31 Cal.App.4th at page 477, application of section 831.7 to activities that are a part of a school's physical education program "would constitute a major revision of California law with respect to school district tort liability."

■ It is well recognized that a cause of action for personal injuries may be stated against a public entity only if authorized by statute. (§ 815.) ■ School districts and their employees are placed under a general duty to supervise the conduct of children on school grounds during school sessions, school activities, recesses and lunch periods. (*Dailey* v. *Los Angeles Unified Sch. Dist.* (1970) 2 Cal.3d 741, 747-748 [87 Cal.Rptr. 376, 470 P.2d 360].) As observed in *Bartell* v. *Palos Verdes Peninsula Sch. Dist.*, *supra*, 83

Cal.App.3d at page 499, the duty of supervision described in *Dailey* is "limited to school-related or encouraged functions and to activities taking place during school hours." (See Ed. Code, § 44807, requiring teachers to supervise student conduct during school sessions and school recesses, and § 815.6, setting forth a public entity's liability for failure to discharge mandatory duty; cf. *Clausing* v. *San Francisco Unified School Dist.* (1990) 221 Cal.App.3d 1224, 1239 [271 Cal.Rptr. 72].) Whether or not a district is negligent in affording supervision of pupils is a question of fact. (*Rodrigues* v. *San Jose Unified School Dist.* (1958) 157 Cal.App.2d 842, 845-846 [322 P.2d 70].)

DISPOSITION

Judgment reversed. Costs on appeal to appellant.

Dibiaso, J., and Thaxter, J., concurred.