[No. C044877. Third Dist. June 2, 2004.]

KENT KILROY et al., Plaintiffs and Appellants, v.
STATE OF CALIFORNIA et al., Defendants and Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II, III, IV, V and VI of the Discussion.

COUNSEL

Law Offices of R. Ellis Harper and R. Ellis Harper for Plaintiffs and Appellants.

Bill Lockyer, Attorney General, James M. Schiavenza, Assistant Attorney General, Darryl L. Doke, Thomas D. McCrackin and Scott H. Wyckoff, Deputy Attorneys General, for Defendants and Respondents.

OPINION

**HULL, J.**—Plaintiffs Kent and Kim Kilroy, doing business as Kilroy's Towing, initiated this action against defendants State of California and Dave Paulus, a California Highway Patrol (CHP) officer, alleging violation of their civil rights and related torts. Plaintiffs allege that Paulus wrongly omitted material facts from an affidavit used to obtain a warrant to search their business. The search turned up firearms that Kent Kilroy was not permitted to possess and led to his prosecution in federal court. That prosecution was later dismissed after the court granted defendant's motion to suppress.

In this matter, the trial court denied plaintiffs' request for judicial notice of the federal court's suppression order and granted defendants' motion for summary judgment. The court concluded that defendants are entitled to immunity on the civil rights claims and that there is no evidence to support plaintiffs' other causes of action. Plaintiffs contend that the court erred in denying their request for judicial notice. They further contend that issues of fact remain as to whether there was probable cause for the search and whether defendants' are entitled to immunity. We affirm the judgment.

FACTS AND PROCEDURAL HISTORY

On review of an order granting summary judgment, we construe the evidence in the light most favorable to the opposing party. (*Molko v. Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].) However, we consider only evidence relevant to the matter in dispute.

On March 1, 1999, Paulus, an 18-year veteran of the CHP, became the "tow coordination officer" for the Grass Valley area, where plaintiffs conducted their business. As the tow coordination officer, Paulus was responsible for overseeing towing companies authorized to be part of the CHP's "tow rotation program," under which tow operators are dispatched on a rotating basis to assist the CHP with disabled or damaged vehicles. Paulus was also responsible for determining if operators are in compliance with CHP requirements for vehicles, drivers and insurance. Kilroy's Towing was included in the CHP's tow rotation program at the time.

On January 20, 2000, Ronald Hines complained to Paulus that his 1987 Chevrolet pickup truck, which was impounded on or about October 25, 1999, had been sold by Kilroy's Towing without Hines's prior approval or knowledge. Hines further indicated that Kent Kilroy had previously asked him for $2,150 to release the vehicle.

On January 25, 2000, Paulus spoke to Kent Kilroy about the sale of Hines's truck. Kilroy said the truck had been sold on January 17 or 18 and that he had attempted to contact Hines, but was unable to do so until after the sale. Kilroy gave Paulus a copy of a vehicle transfer form for the sale. It indicated that the truck had been sold to Carl Droivold for $300. Kilroy said he had no receipt for the sale. Paulus asked if Kilroy knew the purchaser, and Kilroy said he "did not really know Mr. Droivold."

Paulus next reviewed a CHP form 180 prepared by Officer Chris Garrison at the time the truck was taken to Kilroy's Towing. The form listed the value of the truck at $4,000, and Paulus determined it to be consistent with the Kelley Blue Book value. However, there was another version of the form that listed the value of the truck at up to $2,500.

On February 24, 2000, Paulus went to Carl Droivold's residence and spoke to Droivold's wife. He saw the truck, which appeared to be in good condition. Mrs. Droivold said her husband paid "way more than $300" for it. Later that day, Paulus returned to the Droivold residence and spoke to Carl Droivold, who indicated he paid $1,500 for the truck. Carl Droivold also said he had known Kent Kilroy for many years, they were good friends and he had worked for Kilroy on occasion. However, two hours later, Paulus again spoke to Carl Droivold, who recanted his earlier statement about the purchase price and said he paid only $300. Droivold also said he did not pay cash but instead bartered for labor.

On February 25, 2000, Carl Droivold and Kent Kilroy filed citizen's complaints against Paulus. Around the same time, Paulus informed his supervisor, Lieutenant Paul Vinson, about the results of his investigation. Vinson instructed Paulus to prepare an affidavit to obtain a warrant to search for documents regarding the truck sale. Paulus was also told to seek assistance in preparing the affidavit from Officer Garrison, who had more experience in such matters. Because of the citizen complaints, Paulus was removed from further investigation of the matter. There have been no other citizen complaints filed against Paulus.

Paulus and Garrison prepared a search warrant affidavit. The affidavit generally recited the information obtained by Paulus during his investigation. However, it also indicated that Paulus estimated the value of the truck at

$4,000 to $5,000 based on his observation of it at the Droivold residence. The affidavit failed to mention that Carl Droivold had recanted his earlier statement about what he paid for the truck or that Kilroy and Droivold had filed citizen complaints against Paulus. Paulus also did not include the fact that Hines owed $573 in registration fees on the truck, the price Hines paid for the truck, or the truck's mileage, matters which he had not investigated. He also did not include Droivold's claim that the truck was in poor condition and that Droivold had put $5,000 in parts and labor into it.

Paulus presented the affidavit to a magistrate on February 27, and a search warrant was issued. CHP officers other than Paulus executed the warrant at Kilroy's Towing. Paulus acted as the evidence officer for the materials retrieved from Kilroy's Towing.

Kent Kilroy was arrested for possession of firearms discovered in the search. Kilroy had an earlier felony conviction, rendering such possession unlawful. He was prosecuted in federal court, where Judge Lawrence Karlton granted Kilroy's motion to suppress, and the charges were dismissed.

On September 3, 2002, the Kilroys initiated this action against the State of California and Paulus. The complaint alleged six causes of action: (1) violation of civil rights (42 U.S.C. § 1983; Civ. Code, § 52.1), (2) intentional interference with business relations, (3) negligent interference with business relations, (4) negligent hiring and retention, (5) intentional infliction of emotional distress, and (6) negligent infliction of emotional distress. The defendants demurred and the court sustained the demurrers to the interference with business relations and infliction of emotional distress claims. The court also sustained the state's demurrer to the title 42 United States Code section 1983 claim.

Defendants thereafter moved for summary judgment or, in the alternative, summary adjudication of issues. In opposition to the motion, plaintiffs requested judicial notice of Judge Karlton's order granting Kent Kilroy's motion to suppress. Defendants opposed the request and objected to various assertions in plaintiffs' separate statement of material facts.

The trial court denied judicial notice and sustained many of defendants' evidence objections. On the motion for summary judgment, the court concluded that Paulus is entitled to qualified immunity on the title 42 United States Code section 1983 claim and both defendants are entitled to immunity in connection with the Civil Code section 52.1 claim. Finally, the court concluded that there is no factual basis for the negligent hiring and retention claim, because there is no evidence of prior complaints against Paulus. The court granted summary judgment to defendants, and judgment was entered.

DISCUSSION

I

*Judicial Notice*

Plaintiffs contend that the trial court erred in refusing to take judicial notice of Judge Karlton's order granting Kent Kilroy's motion to suppress. Plaintiffs argue that a court may take judicial notice of the records of any other court and of the truth of facts asserted in orders, findings of fact and judgments. Finally, plaintiffs argue that the court is required to take judicial notice of such matters if the proponent gives the adverse party sufficient notice of the request and furnishes the court with sufficient information to enable it to take judicial notice. (See Evid. Code, § 453.) We are not persuaded.

" 'Judicial notice is the recognition and acceptance by the court, for use by the trier of fact or by the court, of the existence of a matter of law or fact that is relevant to an issue in the action without requiring formal proof of the matter.' [Citation.] The court may in its discretion take judicial notice of any court record in the United States. (Evid. Code, § 451.) This includes any orders, findings of facts and conclusions of law, and judgments within court records. [Citations.] However, while courts are free to take judicial notice of the existence of each document in a court file, including the truth of results reached, they may not take judicial notice of the truth of hearsay statements in decisions and court files. [Citation.] Courts may not take judicial notice of allegations in affidavits, declarations and probation reports in court records because such matters are reasonably subject to dispute and therefore require formal proof." (*Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort* (2001) 91 Cal.App.4th 875, 882 [110 Cal.Rptr.2d 877].)

We agree with plaintiffs that it would have been proper for the trial court to take judicial notice of Judge Karlton's order, at least to prove the truth of the fact that such order was issued. However, plaintiffs sought much more from that order. Plaintiffs attempted to use it as evidence of the facts found and recited by Judge Karlton in the order, which facts led him to conclude that the search violated the Fourth Amendment.

In asserting that the trial court was required to take judicial notice not only of the fact of Judge Karlton's order but of the factual findings therein, plaintiffs rely heavily on the following statement by Justice Jefferson in the second edition of his treatise on evidence: "[A] court *cannot* take judicial

notice of *hearsay allegations* as being true, just because they are part of a court record or file. A court may take judicial notice of the *existence* of each document in a court file, but can only take judicial notice of the *truth* of facts asserted in documents such as orders, findings of fact and conclusions of law, and judgments." (2 Jefferson, Cal. Evidence Benchbook (2d ed. 1982) Judicial Notice, § 47.2, p. 1757.)

In support of the foregoing rule, Justice Jefferson cited, among others, *Weiner v. Mitchell, Silberberg & Knupp* (1980) 114 Cal.App.3d 39 [170 Cal.Rptr. 533], where the Court of Appeal held that it was proper for the trial court to take judicial notice of facts stated in a federal appellate opinion affirming a criminal conviction. (*Id.* at pp. 45–46.) The Court of Appeal sought to justify its decision by explaining that "[t]he facts stated in an appellate opinion appear to us to possess generally an assurance of accuracy and reliability . . . ." (*Id.* at p. 46.) However, Justice Jefferson disagreed with the *Weiner* approach, explaining: "The *Weiner* court's view of judicial notice indicates an erroneous concept of judicial notice and is clearly fallacious and indefensible. Judicial notice substitutes for formal proof only because the matters judicially noticed are not reasonably subject to dispute. It is not sufficient for judicial notice that facts sought to be made the subject of judicial notice possess 'generally' an assurance of accuracy. An appellate opinion is not a judgment of the appellate court, such as is the remittitur. An appellate opinion's recitation of facts is nothing more than the hearsay assertions of the judges who issued the opinion. An appellate opinion— insofar as it recites pertinent facts—is not to be classified in the same vein as orders, findings of fact and conclusions of law, and judgments." (2 Jefferson, Cal. Evidence Benchbook, *supra*, Judicial Notice, § 47.2, pp. 1758–1759, italics omitted.)

In *Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort*, *supra*, 91 Cal.App.4th 875, the court explained further that *Weiner* "appears to run counter to the well-established principle that courts may not take judicial notice of hearsay allegations. An appellate court's description of facts is merely the hearsay assertions of the justices who delivered the opinion. Hearsay statements within the opinion are inadmissible unless they fall within an exception to the hearsay rule. Under section 1280 of the Evidence Code, appellate opinions do come within the exception to the hearsay rule for official records. (Evid. Code, § 1280.) However, an official record is '[e]vidence of a writing made as a record of an act, condition, or event . . . offered . . . to prove the act, condition or event . . . .' (*Ibid.*) Thus, while an official record of an appellate opinion can be admitted to prove the truth of the facts asserted, the most it may prove is that the appellate opinion was delivered

and that the court made orders, factual findings, judgments and conclusions of law. Stated another way, what is being noticed is the *existence* of the act, not that what is asserted in the act is true. [Citation.] The truth of any factual matters that might be deduced from official records is not the proper subject of judicial notice." (*Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort, supra*, at p. 885.)

In the third edition of his treatise, Justice Jefferson has not included the statement relied on by plaintiffs. Rather on the question of judicial notice of facts recited in orders and judgments, the treatise states: "Can the court take judicial notice of the truth of the facts asserted in documents such as orders, findings of fact, conclusions of law, and judgments? By making an order establishing the law of the case, it seems that the facts are no longer in dispute and can therefore be considered true as set forth in an order, findings of fact, or conclusions of law." (2 Jefferson, Cal. Evidence Benchbook (3d ed. 2004) Judicial Notice, § 47.12, p. 1094.) Thus, only where the order or judgment establishes a fact for purposes of law of the case or, as we shall explain, res judicata or collateral estoppel, would the fact so determined be a proper subject of judicial notice.

In *Gilmore v. Superior Court* (1991) 230 Cal.App.3d 416 [281 Cal.Rptr. 343], this court held that it was error to take judicial notice of factual statements from a prior appellate opinion involving the same defendant and the same facts. *Gilmore* was a wrongful death case, and in the prior action, we reversed the defendant's manslaughter conviction, concluding that the undisputed evidence established justifiable homicide as a matter of law. The trial court took judicial notice not only of the existence of the opinion and the result reached but of the "statement of the facts surrounding the homicide to establish the truth thereof." We indicated it would normally be error for a court to take judicial notice of statements of facts in an opinion. (*Id.* at p. 418.) However, we concluded that such error did not affect the outcome of the case. (*Id.* at p. 419.)

In *Sosinsky v. Grant* (1992) 6 Cal.App.4th 1548 [8 Cal.Rptr.2d 552], the Court of Appeal affirmed a trial court's refusal to take judicial notice of a judge's factual findings in a prior case. The *Sosinsky* court expressly refused to follow the language from the Jefferson treatise on which plaintiffs rely. The court explained: "While we have no quarrel with the fact that a judge, after hearing a factual dispute between litigants A and B, may choose to believe A, and make a finding of fact in A's favor, and while we have no quarrel that at some subsequent time it may be proper to take judicial notice that the judge did in fact make that particular finding in favor of A, the taking of judicial notice that the judge made a particular factual finding is a far cry from the taking of judicial notice that the 'facts' found by the judge must necessarily

be the true facts, i.e., must necessarily be 'the truth.' To state this a bit more simply, the taking of judicial notice that the judge believed A (i.e., that the judge ruled in favor of A on a particular factual dispute) is different from the taking of judicial notice that A's testimony must necessarily have been true simply because the judge believed A and not B. Indeed, if A's testimony consisted of 'facts . . . that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy' (Evid. Code, § 452, subd. (h)), there would have been no need for a trial on the dispute between A and B in the first place. The Jefferson text points out, quite correctly, that the assertion of a 'fact' in a document that appears in a court file does not necessarily mean that 'fact' is a true 'fact.' Why this general rule changes for statements of 'fact' that are made by a judge in that judge's findings of fact, the text does not address." (*Sosinsky v. Grant, supra,* 6 Cal.App.4th at p. 1565, italics omitted.)

The *Sosinsky* court also took issue with cases asserting that judicial notice of factual findings in prior judicial orders, opinions or decisions is proper where the factual matter had been the subject of a contested adversary hearing. The court stated: "It appears to us, however, that neither a finding of fact made after a contested adversary hearing nor a finding of fact made after any other type of hearing can be indisputably deemed to have been a correct finding. As we have noted, '[u]nder the doctrine of judicial notice, certain matters are assumed to be indisputably true, and the introduction of evidence to prove them will not be required.' [Citation.] Taking judicial notice of the truth of a judge's factual finding would appear to us to be tantamount to taking judicial notice that the judge's factual finding must necessarily have been correct and that the judge is therefore infallible. We resist the temptation to do so." (*Sosinsky v. Grant, supra,* 6 Cal.App.4th at p. 1568.)

■ We agree with the foregoing cases that factual findings in a prior judicial opinion are not a proper subject of judicial notice. However, that does not end our inquiry. "Whether a factual finding is true is a different question than whether the truth of that factual finding may or may not be subsequently litigated a second time. The doctrines of res judicata and collateral estoppel will, when they apply, serve to bar relitigation of a factual dispute even in those instances where the factual dispute was erroneously decided in favor of a party who did not testify truthfully." (*Sosinsky v. Grant, supra,* 6 Cal.App.4th at p. 1569.) ■ In other words, even though a factual finding in a prior judicial decision may not establish the truth of that fact for purposes of judicial notice, the finding itself may be a proper subject of judicial notice if it has a res judicata or collateral estoppel effect in a subsequent action.

Plaintiffs suggest, albeit obliquely, that the court was required to take judicial notice of Judge Karlton's order because it has collateral estoppel effect in this action. Plaintiffs point out that both Paulus and Kent Kilroy testified in the federal court proceeding, arguments were raised on both sides, and probable cause was found lacking. According to plaintiffs, "[t]he findings by Judge Karlton went directly to the issues of concealment and misstatements by the affiant, misdirection to a magistrate, and a reckless or deliberate disregard of truth by affiant Paulus."

In the court below, plaintiffs did not raise collateral estoppel as a basis for taking judicial notice of Judge Karlton's order. At the hearing on defendants' motion, counsel for plaintiffs indicated their argument was not that the court should adopt everything Judge Karlton said, but rather should consider the facts recited therein as a basis for denying summary judgment. Generally, a party may not raise issues for the first time on appeal. (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 394, p. 444; see *Johanson Transportation Service* v. *Rich Pik'd Rite, Inc.* (1985) 164 Cal.App.3d 583, 588 [210 Cal.Rptr. 433].)

At any rate, collateral estoppel is not appropriate here. "[A] party will be collaterally estopped from relitigating an issue only if (1) the issue decided in a prior adjudication is identical with that presented in the action in question; and (2) there was a final judgment on the merits; and (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication." (*Clemmer v. Hartford Insurance Co.* (1978) 22 Cal.3d 865, 874 [151 Cal.Rptr. 285, 587 P.2d 1098], italics omitted.) In addition to being a party or in privity with a party to the prior action, "the circumstances must have been such that the party to be estopped should reasonably have expected to be bound by the prior adjudication." (*Id.* at p. 875.)

The issue decided in the federal proceeding (whether evidence must be suppressed because of deliberate and material omissions) is not identical to the issue to be decided here (whether Paulus is entitled to qualified immunity because his conduct was objectively reasonable). (See *Lombardi v. City of El Cajon* (9th Cir. 1997) 117 F.3d 1117, 1121.) Furthermore, neither Paulus nor the state was a party to the federal court proceeding. That case was brought on behalf of the United States against Kent Kilroy.

■ In this matter, the trial court properly could have taken judicial notice that on January 16, 2001, Judge Karlton issued an order suppressing the evidence obtained in the search of Kilroy's Towing. However, the fact of such ruling has no bearing on this matter and is not what plaintiffs sought. Plaintiffs attempted to present the factual findings of Judge Karlton as evidence of those facts. This was not a proper use of judicial notice, and the trial court correctly denied plaintiffs' request.

II–VI*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed.

Raye, Acting P. J., and Morrison, J., concurred.

---

*See footnote, *ante*, page 140.