Filed 8/31/21 Key v. Tyler CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| SARAH PLOTT KEY,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>ELIZABETH PLOTT TYLER,<br>Individually and as Trustee, etc.,<br><br>Defendant and Respondent. | B298739<br><br>(Los Angeles County<br>Super. Ct. No. BP131447)<br><br>ORDER MODIFYING OPINION<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on August 30, 2021, be modified as follows:

On page 31, first line of the second paragraph under heading 5, add the word "court," so the sentence reads:

After briefing and argument, the probate court ordered payment of Tyler's attorney fees from the Trust.

There is no change in the judgment.

NOT TO BE PUBLISHED.

LUI, P. J.         ASHMANN-GERST, J.         HOFFSTADT, J.

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| SARAH PLOTT KEY, | B298739 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BP131447) |
| v. | |
| ELIZABETH PLOTT TYLER, Individually and as Trustee, etc., | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County.  David J. Cowan, Judge.  Affirmed.

Grignon Law Firm, Margaret M. Grignon, Anne M. Grignon; Wershow & Cole and Jonathan A. Wershow for Plaintiff and Appellant.

Magee & Adler, Eric R. Adler; Murphy Rosen, Paul D. Murphy and Daniel N. Csillag for Defendant and Respondent.

_____

Sarah Plott Key (Key) appeals from an order of the probate court following a trial on Key's objections to a trust accounting. The accounting was provided by Key's sister, respondent Elizabeth Plott Tyler (Tyler), for the time that Tyler was the trustee of the trust. Tyler, Key and another sister, Jennifer Plott Potz (Potz) are the beneficiaries of the trust (Trust), which their parents (Thomas and Elizabeth Plott) established before they died.[1]

We have decided two prior appeals in this case concerning issues relating to the Trust. In the first, we affirmed a prior decision of the probate court (Judge Goetz) finding a 2007 amendment to the Trust (2007 Trust Amendment) invalid because Tyler procured it through undue influence. (*Key v. Tyler* (June 27, 2016, B258055) [nonpub. opn. (*Key v. Tyler I*).) In the second, we reversed a subsequent order by Judge Cowen granting Tyler's motion to strike a petition by Key under the anti-SLAPP statute (Code Civ. Proc., § 425.16). (*Key v. Tyler* (2019) 34 Cal.App.5th 505 (*Key v. Tyler II*).) Key's petition sought to enforce the Trust's no contest provision based on Tyler's judicial defense of the invalid amendment.

In the proceeding leading to this appeal, Key claimed in her objections to Tyler's accounting that Tyler had engaged in self-dealing and malfeasance as a trustee during the approximately two years she actively served in that role. Key challenged various payments the Trust made to Tyler and to Tyler's law firm, claiming those payments were the result of conflicts of interest and Tyler's breach of her fiduciary duties. Tyler claimed

---

[1] Because of the similarity in family names, we refer to the parents as Thomas and Elizabeth.

2

that the payments were actually authorized prepayments of legal fees and other appropriate loans.

Tyler's debts to the Trust were the subject of an audit by an accounting firm, BDO Siderman (BDO), that the probate court ordered. BDO's report confirmed that Tyler's accounting was accurate, and that Tyler owed the Trust over $5 million. Before the trial on Key's objections, Tyler agreed to repay that amount, and then agreed during trial to pay some additional amounts. Thus, the trial primarily concerned Key's claim that Tyler was liable for statutory penalties in addition to the amounts that Tyler conceded she owed. After an 11-day trial, the probate court denied Key's claims that Tyler had breached her fiduciary duties and ordered Tyler to repay to the Trust only those amounts that she had already agreed to pay, plus interest.

Key makes a number of arguments on appeal that challenge the manner in which the probate court conducted the trial. We find no reversible error.

Key's primary argument is that the probate court failed to give collateral estoppel effect to findings that Judge Goetz made in her ruling finding the 2007 Trust Amendment invalid (the Invalidity Ruling). Key forfeited that argument by failing to present it adequately below. The remainder of Key's arguments largely concern evidentiary rulings and other discretionary decisions that the probate court made concerning the conduct of the trial and the exercise of its equitable powers. For the reasons discussed below, we conclude that the court acted well within its discretion with respect to each of these rulings. We therefore affirm.

3

## BACKGROUND[2]

### 1. The Trust

Thomas and Elizabeth owned a successful nursing home business. That business (the Business) was a major asset of the Trust, which Thomas and Elizabeth created in 1999.

Thomas died in 2003. After his death, Elizabeth became the sole trustee of the Trust.

Elizabeth depended upon Tyler for the operation of the Business. Tyler's law firm, Tyler & Wilson, provided legal services to the Business, and Tyler assisted Elizabeth in the operation of the Business.

Using her influence over her mother, Tyler procured her mother's purported consent to the 2007 Trust Amendment, which left the bulk of the assets of the Trust to Tyler and effectively disinherited Key.

Elizabeth died on June 27, 2011. After her death, Tyler became the trustee of the Trust. Tyler remained trustee until September 2013, when the probate court suspended her from that role and appointed two third party trustees in her stead (the Interim Trustees). Tyler retained authority only to manage the day-to-day affairs of the Business. A year later the probate court ordered Tyler removed as trustee for all purposes and directed that she no longer be employed by the Business as of January 2015.

On November 21, 2014, the probate court approved the sale of the Business. The sale was completed on December 31, 2014.

---

[2] Background facts concerning the parties and the Trust are summarized in our two prior opinions. We therefore only briefly discuss them here.

4

## 2. Prior Proceedings

Key filed a petition to invalidate the 2007 Trust Amendment on the ground of undue influence, which Judge Goetz granted on April 25, 2014. Judge Goetz's Invalidity Ruling contained a 67-page, detailed summary of the evidence and the court's factual findings. Tyler appealed, and we affirmed in *Tyler v. Key I, supra,* B258055.

After that ruling, Key filed a petition seeking to enforce the Trust's no contest clause against Tyler on the ground that Tyler defended the validity of the 2007 Trust Amendment against Key's petition without probable cause (No Contest Petition). Tyler responded with a motion to strike under the anti-SLAPP statute. The probate court granted that motion.

We reversed in *Key v. Tyler II, supra,* 34 Cal.App.5th 505. In doing so, we held that Key had demonstrated a probability of success on her No Contest Petition based upon Judge Goetz's findings in the Invalidity Ruling, which are binding under the doctrine of collateral estoppel. (*Id.* at pp. 535–540.)

## 3. Proceedings on Tyler's Accounting

Tyler filed an initial accounting for the Trust on March 1, 2013. That accounting concerned the period June 27, 2011, to June 30, 2012. Key objected to the accounting on a number of grounds, including that Tyler had allegedly breached her duty of loyalty based upon claimed conflicts of interest.

In light of disputes concerning the accuracy of the accounting, the probate court ordered an audit by BDO. After its audit, BDO issued an extensive report on September 22, 2015. The report noted "no exceptions" to the "validity, accuracy and completeness" of the financial records in the accounts that it reviewed.

5

Tyler and Potz agreed to accept the BDO report in lieu of any further accounting by Tyler. However, Key did not agree and requested a further accounting. The probate court therefore ordered Tyler to file an updated accounting.

In response to the court's order, Tyler filed an additional accounting on January 6, 2017, concerning her entire time as trustee. Key objected.

Among other things, Key's objections alleged that Tyler "committed breaches of trust, breached her fiduciary duty, engaged in self-dealing and wasted Trust assets." The objections identified specific conduct that Key claimed was improper, including (1) prepaid legal fees by the Trust to Tyler & Wilson; (2) payments to an insurance company, TEP, which Key alleged Tyler started with Trust funds to insure Tyler & Wilson; (3) converting bank accounts belonging to Elizabeth to joint accounts for Tyler's own use; (4) excessive compensation; (5) failure to make payments on a mortgage loan to Tyler from the Trust and failure to foreclose on that loan on behalf of the Trust; and (6) alleged irregularities in expense reimbursements and the personal use of a Business American Express card. Key sought an order surcharging Tyler for the amounts she owed as well as double damages under Probate Code section 859 and attorney fees.[3]

Key also filed a separate petition against Tyler alleging a broad scheme to "loot the Trust" (Third Amended Petition). The Third Amended Petition alleged claims based upon Tyler's exercise of undue influence over Elizabeth in obtaining the 2007

---

[3] Subsequent undesignated statutory references are to the Probate Code.

6

Trust Amendment, and also alleged breaches of Tyler's fiduciary duties as trustee. In addition to allegations that Tyler breached her duty of loyalty, the Third Amended Petition alleged that Tyler mismanaged the Business, causing losses. The Third Amended Petition also sought double damages against Tyler under section 859.

Because of the overlap in issues raised by the objections to Tyler's accounting and in Key's Third Amended Petition, the parties stipulated that trial should proceed first on Tyler's accounting, followed by a separate trial on "all issues in Key's Third Amended Petition and any other currently pending petition" that was "not otherwise resolved" by the accounting trial (Accounting Trial). The parties also agreed on a joint statement identifying the issues for the Accounting Trial.

As part of the joint statement, Tyler agreed that she was responsible to repay to the Trust all those amounts that the BDO report identified as her obligations. Those obligations included: (1) prepaid legal fees and other receivables due from Tyler & Wilson; (2) amounts due on Tyler's mortgage loan; (3) amounts due on various other loans; and (4) Tyler's American Express charges. Tyler also agreed to accept some additional obligations, including an agreement to pay to the Trust the money in the joint accounts with Elizabeth and to repay costs and interest on another loan. As a result of this agreement, before the trial Tyler had already accepted the responsibility to pay the Trust over $5.5 million.

Key disputed some of the amounts of Tyler's obligations, and also claimed that Tyler had breached her duties as trustee in incurring the debts that she owed. She therefore sought double damages under section 859.

## 4. The Probate Court's Ruling

Trial took place over 11 days in June 2018. Following posttrial briefing, including the opportunity to object to the court's proposed statement of decision, the probate court issued a final statement of decision on February 25, 2019 (Statement of Decision).

In its Statement of Decision, the court overruled Key's objections to the accounting and approved the accounting subject to additional concessions that Tyler made before and during the trial concerning the amounts that she owed. The additional concessions consisted of Tyler's agreement to repay over $400,000 that TEP had paid on the insurance policy for Tyler & Wilson and to increase the amount that she owed for the joint accounts with Elizabeth by about $150,000.

The court rejected Key's breach of fiduciary duty allegations. The court found that "there was an insufficient showing that Tyler breached her duty of loyalty to Objectors. Although Tyler did have various conflicts . . . Objectors failed to show how those conflicts were impermissible, how Tyler took wrongful advantage of those conflicts or how those conflicts made a material difference to Objectors—keeping in mind the concessions that Tyler made." The court also rejected Key's request for double damages under section 859, finding that "there was no evidence of improper conduct by Tyler sufficient to warrant" such damages.

With respect to Key's specific allegations of misconduct, the court found that: (1) the prepaid legal fees to Tyler & Wilson (the Advances) were approved by Elizabeth and Terry Steege (the financial officer for the Business) and were an appropriate part of a "larger business plan" through which the Business and the

8

Trust profited;[4] (2) Tyler's compensation was reasonable; and (3) although there were conflicts associated with the relationship among the Trust, Tyler & Wilson, and TEP, Tyler provided satisfactory explanations and there was "appropriate legal, business and other independent advice relating to establishing TEP." The court reserved Key's allegation that Tyler mismanaged the Business for subsequent determination along with other allegations of wrongdoing in Key's Third Amended Petition.

The court expressed its frustration with the need for the trial: "Ultimately . . . the relatively minor issues that either Tyler acknowledged responsibility for and/or were decided at trial did not require the huge expense and time involved in preparing for and then conducting this lengthy trial on what was primarily Key's objections to the accounting. . . . [¶] The minimal evidence Key presented at trial showed that it was unnecessary for Key to have insisted upon Tyler's Accounting so as to have justified her objections."

---

[4] Key contends that the probate court erred in finding that Elizabeth approved the prepayment of legal fees because Judge Goetz found in her Invalidity Ruling that Tyler pressured Elizabeth into paying Tyler & Wilson's invoices. As discussed further below, this issue illustrates the problem with Key's failure in the probate court to identify particular findings from the Invalidity Ruling that she claimed foreclosed specific issues in the Accounting Trial.

9

## DISCUSSION

## 1. Key Forfeited Her Collateral Estoppel Argument

Key argues that the probate court erroneously permitted issues to be relitigated that had already been decided in proceedings concerning the 2007 Trust Amendment (Invalidity Proceedings). Key relies on findings in the Invalidity Ruling in claiming that collateral estoppel precluded relitigation of identical issues in the Accounting Trial.

We agree that the doctrine of collateral estoppel may preclude relitigation of issues that were previously decided in the Invalidity Proceedings. We so held in *Key v. Tyler II*. (See *Key v. Tyler II, supra,* 34 Cal.App.5th at pp. 534–536.) But the benefits of that doctrine may be forfeited. (See *Franklin Mint Co. v. Manatt, Phelps & Phillips, LLP* (2010) 184 Cal.App.4th 313, 332 (*Franklin Mint*) [" '[C]ollateral estoppel must be proved [in the trial court] or it is waived' "], quoting *Jordan v. Consolidated Mut. Ins. Co.* (1976) 59 Cal.App.3d 26, 45; *County of Yolo v. Francis* (1986) 179 Cal.App.3d 647, 655, fn. 11 ["unless properly raised in the trial court by pleading or evidence, the defense of collateral estoppel is waived"].) And it is the burden of the party who seeks to preclude litigation of an issue to show that the requirements of collateral estoppel have been met. (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341 (*Lucido*).)[5]

---

[5] To establish that collateral estoppel precludes litigation of a particular issue, the moving party must show that: (1) the issue the moving party seeks to preclude is identical to that decided in a former proceeding, (2) the issue was actually litigated and (3) necessarily decided in that proceeding, and

10

This is consistent with the general rule that a party may not raise an issue on appeal that the party did not first raise in the trial court. That rule is based on fairness to the trial court and to opposing litigants. (*Key v. Tyler II, supra*, 34 Cal.App.5th at p. 533; *Nellie Gail Ranch Owners Assn. v. McMullin* (2016) 4 Cal.App.5th 982, 997.) "The fundamental rule that a reviewing court does not consider arguments or theories that could have been but were not raised below 'is especially applicable to the doctrine of estoppel, which includes factual elements that must be established in the trial court.' " (*Rogers v. County of Los Angeles* (2011) 198 Cal.App.4th 480, 490, fn. 6, quoting *Honig v. San Francisco Planning Dept.* (2005) 127 Cal.App.4th 520, 530.)

### a. *Arguments in the probate court*

Key did not adequately raise the issue of collateral estoppel in the probate court. Indeed, Key has not cited to anything in the record showing that she argued the issue at all before the trial court issued its Statement of Decision.

Key's pretrial filings did not argue that any issues should be foreclosed under the doctrine of collateral estoppel. Key's trial brief recited a list of findings about Tyler's conduct from the Invalidity Proceedings, but suggested only that the conduct "should be kept in mind in analyzing [Tyler's] conduct as trustee." Key also filed a short request for judicial notice of the Invalidity Decision and this court's opinion in *Key v. Tyler I*. But Key's request did not state *why* Key was requesting judicial notice, or how she expected the probate court to use these

---

(4) the decision in the former proceeding is final and was on the merits. (*Lucido v. Superior Court, supra,* 51 Cal.3d at p. 341; see *Key v. Tyler II, supra,* 34 Cal.App.5th at p. 534.)

11

documents. Tyler's opposition did not object to judicial notice of the documents themselves, but correctly pointed out that judicial notice is not a mechanism to establish the truth of facts asserted in prior judicial rulings or opinions. (See *Kilroy v. State of California* (2004) 119 Cal.App.4th 140, 146–150 (*Kilroy*).)

Key also did not mention the doctrine of collateral estoppel when the court and the parties discussed the reason for Key's request for judicial notice before trial. On the first day of trial, the court explained, correctly, "I think that I cannot take judicial notice of the underlying facts, necessarily, except to the extent perhaps, that they have been ruled on, and conclusions that were tried in that case." Instead of responding with an argument concerning the collateral estoppel effect of the Invalidity Decision, Key's counsel argued the doctrine of law of the case: "[T]he court, I think, is required to take judicial notice of the existence of orders. To simply have law of the case, findings of fact, conclusions of law, those would be part of the record, and it would not be proper for the court to allow evidence to contradict those. [¶] . . . [I]t may be that we'll have to use evidence of some of this as it applies to matters not directly ruled upon at the time of the last trial, but as for the findings and conclusions of law, I believe it, as the law of the case, we're all bound by them."

The court then questioned the legal effect of the prior ruling with respect to factual findings: "I don't think I'm going to hear much opposition to my taking judicial notice of conclusions of law. It's the findings of fact that it gets a little trickier." In response, Key's counsel suggested that they defer the issue: "We may have to take them on a question-by-question basis as they arise, rather than trying to come up with some scheme in advance to try and control it, because we don't know until we get

into this trial what questions will be asked, what answers we will get, and what statements we can take from Ms. Tyler's testimony in prior proceedings, or Mr. Steege's testimony in prior proceedings, and use them in these proceedings."

Thus, rather than arguing that particular issues in the case were precluded under collateral estoppel, Key's counsel suggested that they might use particular *testimony* from the prior proceeding during the trial. After some further discussion of the significance of taking judicial notice, the court agreed with the proposal by Key's counsel to "deal with this, not as a scheme, but that we deal with this issue by issue, fact by fact, because things may change, in terms of what the facts are."

Key cites only one instance in which she then actually objected during trial on the ground that evidence should not be introduced based on the Invalidity Decision. Key moved to strike testimony by Tyler during examination about a reduction in the interest on her mortgage loan from 6 percent to 3 percent. Tyler's testimony concerned a statement by her father when he declined Tyler's offer of an interest payment on her mortgage. Tyler testified that her father handed Tyler's proffered check back to her and said, " 'You don't need to do this anymore,' " and " 'The house will be yours when I die.' " Key objected on the ground that this was testimony "regarding [Thomas's and Elizabeth's] intent, which was already decided and litigated in the 2007 amendment regarding this particular issue as res judicata and collateral estoppel and is in the statement of decision that there was no evidence presented of their intent regarding this loan during that trial." The court denied the motion.

Thus, Key's one objection during trial, while vaguely referring to "res judicata" and "collateral estoppel," did not

mention any previously decided issue, but instead suggested that there was no evidence concerning the subject of the testimony during the prior trial.[6]

Key cites statements in her posttrial filings that, as in her trial brief, generally referred to findings in the Invalidity Ruling, but without any argument that those findings should be given effect under the doctrine of collateral estoppel. Nor did those references identify specific rulings from the Invalidity Ruling that decided the *same* issues that were at stake in the Accounting Trial.

It was not until Key's motion for a new trial that she identified particular findings from the Invalidity Ruling that she claimed should have been given preclusive effect under the doctrine of collateral estoppel.

### b.    *Legal consequences of Key's failure to argue the doctrine or its elements*

Raising collateral estoppel in a new trial motion is too late to preserve the issue for appeal. (*Dillard v. McKnight* (1949) 34 Cal.2d 209, 217.) Key's general references to the claimed preclusive effect of findings in the Invalidity Ruling before the probate court issued its final Statement of Decision also were not sufficient to preserve the issue.

First, Key never adequately addressed the doctrine itself. One passing mention of collateral estoppel in a single objection during trial was not enough to inform the court of how that

---

[6] The objection apparently referred to a comment in Judge Goetz's Invalidity Ruling stating that "[Tyler] has an unpaid loan made to her by her parents in the amount of $1,800,000 with an original interest rate of 6% that is now 3%. No evidence was introduced to document the reduction in interest rates."

doctrine might apply to this case. Key's arguments that findings from the Invalidity Proceeding could be judicially noticed or were controlling under the doctrine of law of the case, and arguments that evidence from the prior proceeding should be considered, also were not sufficient to apprise the court that it needed to consider and rule on the issue of collateral estoppel.

Judicial notice, law of the case, and collateral estoppel are distinct doctrines with different elements. Judicial notice enables a court to accept facts that are not subject to reasonable dispute. As discussed above, that doctrine does not extend to factual findings in judicial opinions. (See *Kilroy, supra,* 119 Cal.App.4th at pp. 148–149 [plaintiffs did not preserve the issue of collateral estoppel for appeal by arguing incorrectly that the trial court could judicially notice factual findings in a prior judicial opinion].) And law of the case refers to the principle that " '[t]he decision of an appellate court, stating a rule of law necessary to the decision of the case, conclusively establishes that rule and makes it determinative of the rights of the same parties in any subsequent retrial or appeal in the same case.' " (*Morohoshi v. Pacific Home* (2004) 34 Cal.4th 482, 491, quoting 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 895, p. 928.)

As its name implies, the law of the case doctrine extends only to principles of *law* that an appellate court decides. In a retrial, the established law must then be applied to the evidence that is introduced during that trial. (*People v. Barragan* (2004) 32 Cal.4th 236, 246 (*Barragan*).) "Thus, during subsequent proceedings in the same case, an appellate court's binding legal determination 'controls the outcome only if the evidence on retrial or rehearing of an issue is substantially the same as that upon which the appellate ruling was based.' " (*Ibid.,* quoting

15

*People v. Mattson* (1990) 50 Cal.3d 826, 850.) However, "[w]here, on remand, 'there is a substantial difference in the evidence to which the [announced] principle of law is applied, . . . the [doctrine] may not be invoked.' " (*Barragan,* at p. 246, quoting *Hoffman v. Southern Pac. Co.* (1932) 215 Cal. 454, 457.)

Under the law of the case doctrine, this court's prior opinion in *Key v. Tyler I* established the legal principle that the evidence in the Invalidity Proceeding was sufficient to support the probate court's ruling that Tyler exercised undue influence over her mother in obtaining the 2007 Trust Amendment. It did not establish that Tyler necessarily breached her fiduciary duties when she became a trustee four years later, or that Elizabeth failed to give valid consent to any prior or subsequent actions that Tyler took. Key's failure to apprise the probate court of the correct legal doctrine to analyze the binding effect of findings in the Invalidity Proceeding precludes her from arguing that the trial court erred in considering the evidence that the parties presented at the Accounting Trial.[7]

---

[7] In the context of the preclusion doctrines that Key actually argued, the trial court's ruling concerning the effect of factual findings from the Invalidity Proceeding was entirely correct. The court correctly explained in its Statement of Decision that "[r]equests for judicial notice are not a substitute for putting on evidence." Similarly, the court also correctly noted that the law of the case doctrine "does not relieve a party from putting on evidence necessary for its case." The court's general statement that prior findings from the Invalidity Proceeding did "not establish facts for *different purposes* at a later trial" was also correct, as far as it went. (Italics added.) Given Key's failure to argue the elements of collateral estoppel, the probate court

16

Second, even if Key had adequately invoked the collateral estoppel doctrine, Key never showed how the findings in the Invalidity Ruling met the elements of the doctrine. It was Key's burden to establish each of those elements. (*Franklin Mint*, *supra,* 184 Cal.App.4th at p. 332.) That burden is a heavy one because " ' "the law does not favor estoppels." ' " (*Kemp Bros. Construction, Inc. v. Titan Electric Corp.* (2007) 146 Cal.App.4th 1474, 1482, quoting *People v. Garcia* (2006) 39 Cal.4th 1070, 1092 (conc. & dis. opn. of Chin, J.).) To adequately preserve the issue of collateral estoppel for appeal, Key should have identified particular issues that Judge Goetz decided in the Invalidity Proceeding and explained how those issues foreclosed reconsideration of the *same* issue in the Accounting Trial. (See *Franklin Mint*, at p. 332 [finding waiver even though a party "made references to the collateral estoppel effect" of a prior case where the party "did not identify the elements of collateral estoppel, let alone attempt to apply the facts of the case to those elements"].)[8]

That showing was particularly important at the Accounting Trial because, as the probate court repeatedly noted, the issues involved in that trial were different from the issues in the Invalidity Proceeding. The Invalidity Proceeding concerned

---

cannot be faulted for not stating the corollary principle that prior findings on the *same* issue should be given binding effect.

[8] Key has set forth a number of such arguments in her reply brief on appeal. Entertaining those detailed arguments for the first time on appeal would be highly unfair to the probate court, which never had an opportunity to consider such a showing before deciding the facts based on the evidence that the parties presented at trial.

17

specific conduct by Tyler that unduly influenced her mother to agree to the 2007 Trust Amendment.**9** The Accounting Trial

---

**9** In the Invalidity Ruling, Judge Goetz did make some findings concerning facts that could have been relevant to the probate court's decision in the Accounting Trial. For example, in explaining Tyler's relationship with her mother, Judge Goetz found that in 2004 Tyler "used her position to gain [Elizabeth's] compliance in certain ways, e.g., not putting a cap on Tyler & Wilson's legal fees, and pressuring [Elizabeth] to sign checks for services provided by Tyler & Wilson when she was in disagreement with some of the services they were providing (collecting personnel data)." This finding was based primarily on an e-mail that Terry Steege, the Business financial officer, sent in September 2004 describing a conflict between Tyler and Elizabeth over the amount of Tyler & Wilson's fees. However, such factual findings would not necessarily have been binding on any issue that the probate court actually decided in the Accounting Trial, much less have changed the outcome of that decision. That Tyler successfully pressured Elizabeth not to cap the *amount* of Tyler & Wilson's fees in 2004 does not necessarily mean that Tyler unduly influenced Elizabeth to approve the Business practice of *prepaying* the firm's legal fees for years until Elizabeth's death. As the probate court noted, Steege (the author of the 2004 e-mail) was also aware of the prepayment arrangement. Steege testified at the Accounting Trial that Elizabeth never expressed any concern about the "credit balance outstanding with Tyler & Wilson." He explained that "we discussed it and—I mean, [Elizabeth] had definitely a way about her that she could have made a big stink about that, because she's done that in the past, but that was never an issue to her." He also testified that Elizabeth never took "any steps to reduce the prepayments after that process was initiated in 2004."

18

concerned Tyler's exercise of her fiduciary duties as trustee years later, after her mother had died.[10]

---

We do not need to decide the precise effect, if any, of Judge Goetz's prior findings concerning Tyler & Wilson's legal fees on the issues in the Accounting Trial. This example simply illustrates that details matter. By failing to identify *specific* findings from the Invalidity Ruling that she claimed foreclosed particular issues in the Accounting Trial, Key never gave the probate court the opportunity to consider these details.

[10] In contrast, the issues at stake in Key's earlier appeal in *Key v. Tyler II* were closely related to the issues in the Invalidity Proceeding. In our opinion in that appeal, we held that Key had adequately preserved her collateral estoppel argument by generally arguing in the trial court that Tyler was "estopped" from denying her exercise of undue influence or claiming that she had probable cause to defend the 2007 Trust Amendment and by submitting Judge Goetz's Invalidity Ruling in support. (*Key v. Tyler II, supra,* 34 Cal.App.5th at p. 533 & fn. 14.) In the context of that appeal, such a showing was sufficient. The appeal concerned Tyler's anti-SLAPP motion directed to Key's No Contest Petition. The similarity of the issues between the Invalidity Proceeding and Key's No Contest Petition meant that the findings in Judge Goetz's Invalidity Ruling directly concerned Tyler's exercise of undue influence and were highly relevant to the closely related question of whether Tyler had probable cause to defend the validity of the 2007 Trust Amendment. And Key's task in opposing Tyler's anti-SLAPP motion was simply to demonstrate that her No Contest Petition had sufficient merit to proceed. We, like the trial court, considered that showing without weighing any evidence or deciding any issues of disputed fact.

In contrast, here Key argues that the probate court erred in the evidence it considered and the factual issues that it decided

19

A specific showing of particular findings from the Invalidity Ruling that Key claimed determined the same issues in the Accounting Trial was also particularly important here because of the nature of Judge Goetz's ruling. As we noted in *Key v. Tyler II,* the Invalidity Ruling consists of a 67-page statement of decision "containing a detailed collection of findings." (*Key v. Tyler II, supra,* 34 Cal.App.5th at p. 534.) We further explained that "[n]ot every interpretation of every item of evidence discussed in Judge Goetz's description of her findings is necessarily binding under the doctrine of issue preclusion." (*Ibid.*) Rather, only findings that were " 'not . . . ". . .unnecessary" ' " to the court's decision are binding. (*Ibid., citing Lucido, supra,* 51 Cal.3d at p. 342.) Key could not reasonably expect the probate court here to sift through the lengthy and detailed Invalidity Ruling to identify the findings that might be both binding and relevant to the issues involved in the Accounting Trial absent specific requests and argument on the issues by Key.

Third, Key herself proposed a trial procedure that placed the responsibility on her to identify specific instances in which

---

at trial based upon a doctrine that Key never explained. To find that collateral estoppel applied, the probate court would have needed to consider the similarity between specific issues in the Invalidity Proceedings and in the Accounting Trial. That would have required consideration of the facts. In this context, where Key is seeking retrial on the ground that the probate court improperly ignored prior factual findings and therefore erred in ruling on the evidence that it heard, fairness required that Key do more to bring the doctrine of collateral estoppel to the probate court's attention than simply refer generally to the binding effect of the Invalidity Ruling.

20

the findings from the Invalidity Proceeding arguably precluded relitigation of issues in the Accounting Trial. As discussed above, after agreeing to that procedure, during trial she objected only once on the ground that particular evidence was inconsistent with issues decided during the Invalidity Proceeding, and on that occasion her objection actually suggested that the issue at hand had actually *not* been decided in the prior proceeding.

The responsibility of a trial court sitting as a trier of fact is generally to rule based upon the evidence that is presented at trial. If Key wished the probate court to accept particular issues as already decided under the doctrine of collateral estoppel, or to exclude consideration of particular evidence on the ground that it contradicted a previous finding, fairness to the probate court and to the other parties required her to do more than simply refer generally to the prior Invalidity Ruling and expect the court to apply it to the case at hand. Nor could Key simply assume that the court's prior ruling in the Invalidity Proceeding that Tyler exercised undue influence over her mother in 2007 meant that Tyler necessarily breached her fiduciary duties years later. Key failed to bring the doctrine of collateral estoppel to the probate court's attention in any meaningful way, and therefore forfeited the issue.

**2.  The Trial Court Did Not Err in Considering the Issue of Tyler's Good Faith**

Key argues that the probate court erred in applying a "bad faith" standard that was inconsistent with the Trust's exculpatory provision and with the Probate Code. Key cites article 9 of the Trust, which permits trustee liability for "willful misconduct or gross negligence," and section 16461, subdivision (b), which provides that a trust provision may not relieve a

21

trustee of liability for breaches "committed intentionally, with gross negligence, in bad faith, or with reckless indifference to the interest of the beneficiary."

Key's argument is apparently based on the probate court's citation in its Statement of Decision to article 10 of the Trust as "the standard for the Trustee's liability for surcharge; bad faith or willful misconduct." Key argues that this standard applied only to decisions made in the operation of the Business and is too lenient a standard for assessing whether a trustee breached a duty of loyalty.

We need not consider whether the probate court misinterpreted the scope of the exculpatory provision in article 10 or misapplied the exculpatory provisions in the Trust. The court's Statement of Decision clearly sets forth the probate court's finding that "there was no evidence of gross negligence, bad faith or intentional or willful wrongdoing by Tyler." Thus, the probate court found no liability even under the standard that Key urges.

Nor did the probate court err in using a bad faith standard as a benchmark for analyzing Tyler's conduct. As the court noted in discussing Tyler's agreement to repay the Advances, "the only reason these [Advances] were still in dispute was due to Key's claim that Tyler should also be surcharged for these amounts over and above already agreeing to pay them; i.e., by way of double damages, and as to what rate of interest and for what time period Tyler should pay interest on the Advances." Key's claim for double damages was based on section 859, which expressly requires a bad faith standard: "If a court finds that a person has *in bad faith* wrongfully taken, concealed, or disposed of property belonging to a . . . trust . . . , the person shall be liable

22

for twice the value of the property recovered by an action under this part." (§ 859, italics added.)

As discussed above, before the trial began Tyler had already agreed to the repayment of almost all the sums that the court ultimately found Tyler owed to the Trust. Thus, the trial itself was almost entirely focused on remedy beyond repayment. In that context, the trial court's focus on whether Tyler engaged in bad faith conduct was both logical and appropriate.

We also reject Key's argument that, in considering the issue of bad faith, the probate court misapplied the law concerning breach of the duty of loyalty. Citing *Uzyel v. Kadisha* (2010) 188 Cal.App.4th 866 (*Uzyel*), Key argues that once a trustee's self-dealing is shown, the law permits " 'no further inquiry' " into the trustee's good faith to prove a breach of loyalty.

The parties dispute the scope of this "no further inquiry" standard and whether it precludes consideration of a trustee's good faith where the trustee's conduct is allegedly consistent with the trustor's intent. We need not resolve this dispute, as the probate court was specifically authorized by statute to consider Tyler's good faith in deciding what was actually at stake in the trial—i.e., Tyler's liability for sums beyond what she had already agreed to repay.

Section 16440, subdivision (a) sets forth a choice of remedies "[i]f the trustee commits a breach of trust." Subdivision (b) of that section then states that, "[i]f the trustee has acted *reasonably and in good faith* under the circumstances as known to the trustee, the court, in its discretion, may excuse the trustee in whole or in part from liability under subdivision (a) if it would be equitable to do so." (§ 16440, subd. (b), italics

added.)[11]  This section is based on the principle that " '[t]he remedies of a beneficiary against the trustee are exclusively in equity.' " (*Orange Catholic Foundation v. Arvizu* (2018) 28 Cal.App.5th 283, 293, quoting section 16421.)  "This is significant, because it means that 'wide play is reserved to the court's conscience in formulating its decrees.' " (*Orange Catholic Foundation*, at p. 293, quoting *Lickiss v. Financial Industry Regulatory Authority* (2012) 208 Cal.App.4th 1125, 1133.)[12]

The probate court did not mention section 16440, subdivision (b) in its Statement of Decision.  However, the probate court expressly found that Tyler acted in good faith and consistent with the settlors' intent.  The probate court also clearly considered those facts as relevant to whether it should award "a surcharge against Tyler for assuming roles her parents contemplated."  Thus, the record shows that the probate court's ruling would have been the same whether it considered Tyler's good faith as an element of liability or as a factor relating to remedy.

In addition, as discussed above, section 859 specifically requires a finding of bad faith to award a statutory penalty, which was the issue really at stake in the trial.  Thus, whether

---

[11] The court in *Uzyel* acknowledged this provision and declined to apply it in that case only because the court concluded it did not apply to "a trustee who acted in bad faith by serving his own interests." (*Uzyel, supra,* 188 Cal.App.4th at p. 906.)  Here, in contrast, the probate court found that Tyler acted in good faith and not "to the detriment of other beneficiaries."

[12] A similar good faith provision applies to the calculation of interest on amounts that a trustee owes. (See § 16441, subd. (b).)

the probate court considered Tyler's good faith as an issue of liability rather than excuse (and, if so, whether it erred in doing so) was immaterial to the outcome of the trial. The issue therefore provides no ground for reversal. (See Cal. Const., art. VI, § 13; Code Civ. Proc., § 475.)

3. **The Probate Court Did Not Abuse Its Discretion in Excluding Expert Witnesses Concerning the Applicable Legal Standard**

Key argues that the probate court erred in excluding testimony from several experts concerning the applicable standard of care. The court excluded that testimony both because the experts were not prepared to testify about the standard of care in the Trust itself, which the court concluded was the applicable standard, and because the experts were not qualified to offer opinions that would help the court. The court explained that the experts' "only tangential qualification was as attorneys practicing trust litigation. In turn, much of their proposed testimony pertained to providing an impermissible opinion—on the ultimate issue which it was solely for the Court to decide in any event; whether there was a breach of fiduciary duty."

The probate court's second stated reason was itself sufficient to support its decision. Expert testimony is limited to subjects that are "sufficiently beyond common experience that the opinion of an expert would assist the trier of fact." (Evid. Code, § 801, subd. (a).) Trial courts have discretion to determine whether proffered testimony meets this standard, and their decisions will not be reversed on appeal absent an abuse of that discretion. (*Caloroso v. Hathaway* (2004) 122 Cal.App.4th 922, 928.)

25

We find no abuse of discretion here. The proffered experts would have testified on the proper interpretation and alleged breach of the standard of care, which was a legal issue for the court to decide. " 'It is thoroughly established that experts may not give opinions on matters which are essentially within the province of the court to decide.' " (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 884, quoting *Carter v. City of Los Angeles* (1945) 67 Cal.App.2d 524, 528.) Moreover, even if the experts were qualified to interpret the standard of care, the court acted well within its discretion in concluding that testimony from trust litigators would not have been any more helpful to the court in deciding the legal issues than briefing and argument by the parties' counsel.

4. **The Probate Court Did Not Abuse its Discretion in Determining the Scope of the Trial**

Key claims that the probate court committed several errors generally related to its alleged misunderstanding of the scope of an accounting trial. Specifically, Key argues that the probate court erroneously: (1) reserved for a later proceeding the issue of whether Tyler diminished the value of the Business through alleged mismanagement; (2) limited the relief available to Key; and (3) limited the evidence concerning Tyler's alleged misconduct. We find no prejudicial error with respect to any of these issues.

a. *Bifurcation of issues*

The probate court acted well within its discretion in deciding to reserve for a later hearing Key's claim that Tyler's mismanagement injured the Business. The court based this decision on the fact that the sale of the Business occurred after the time period involved in the Accounting Trial. The court

reasoned that "any alleged diminution in value of the [Business] was not something that could be addressed as part of the Accounting Trial—where this would require comparison to values during other time periods—and where moreover any proven diminution in value of this privately held family business would still not result in an actual loss unless there had been a sale—which was not during the Accounting Period."  The court did not preclude Key from pursuing this claim, but simply concluded that it should be resolved in a future proceeding along with the other claims asserted in Key's Third Amended Petition that were not considered in the Accounting Trial.

Trial courts have wide discretion in deciding the sequence of issues for trial.  (See Code Civ. Proc., § 1048; Evid. Code, § 320; *Grappo v. Coventry Fin. Corp.* (1991) 235 Cal.App.3d 496, 504 ["trial courts have broad discretion to determine the order of proof in the interests of judicial economy"].)  Moreover, Key identifies no prejudice from the trial court's decision on the order of proceedings other than the fact that the ruling in the Accounting Trial might affect or determine some of the issues in a later trial on the mismanagement claim.  As Tyler points out, that is a complaint that could be made about any bifurcated proceeding.

Key cites *Estate of Howard* (1976) 58 Cal.App.3d 250 (*Howard*) for the proposition that the probate court was required to resolve all the disputes between Tyler and Key in one proceeding.  The holding in that case does not extend that far.  The probate court in that case entered a final ruling on a trust accounting after a summary procedure, without taking testimony and without resolving the beneficiaries' claims of trustee misconduct.  (*Id.* at p. 256.)  The Court of Appeal reversed,

27

holding the proceeding should have included consideration of all the controversies between the parties, including the allegations of misconduct. (*Id.* at p. 257.)

*Howard* stands for the proposition that a probate court must resolve all the disputes raised in objections to an accounting, including claims of trustee misconduct. But it does not hold that the probate court must necessarily resolve all those disputes in one hearing. Such an interpretation would conflict with the substantial discretion the trial courts enjoy to order their proceedings.

The probate court's order here resolved some issues and specifically reserved others for future determination, including "Key's claim that Tyler caused the [Business] to be sold for a depressed price." We find no abuse of discretion in the probate court's decision to adopt this procedure.

### b. *Alleged limitation of relief*

Key contends that the probate court improperly limited the relief that she could seek in the Accounting Trial. However, she does not identify any specific request for relief that the probate court refused to rule upon.

Key complains that the court declined to consider the loss in value of the Business. However, as discussed above, the court did not refuse to consider that claim but simply deferred it for later determination.

Key also argues that the court erred in its "exclusion of a section 859 penalty." But the probate court did not decline to consider Key's request for enhanced damages under section 859. Rather, the court ruled on it. The court's Statement of Decision explained that, "[a]lthough the Court questioned whether damages could be awarded under Probate Code § 859 in this

28

Accounting Trial where liability could not be established under Probate Code § 850, the Court finds that it does not need to reach this legal issue. Here, there was no evidence of improper conduct by Tyler sufficient to warrant double damages under Probate Code § 859." Thus, despite its reservations about the procedural propriety of Key's section 859 claim, the court decided it. Key has no basis to object to the ruling, as Key requested in the parties' pretrial joint statement that the issue be included in the Accounting Trial. Key may not like the probate court's ruling, but the court did not refuse to provide one.

Finally, Key argues that the probate court erred in "refusing to consider" a statutory penalty for the Advances that Tyler & Wilson received when Elizabeth was alive and still acting as trustee. This argument does not concern the probate court's failure to *consider* a particular element of relief, but rather the court's decision not to award it.

The probate court explained that "the bulk of the unearned Advances were made before Tyler became the Trustee" and noted that "Tyler has never contested her obligation to repay the unearned Advances, net of credits to [Tyler & Wilson]." The court also found that the Advances were "known by [Elizabeth] since 2004 or 2005" and were approved by her and financial officer Terry Steege "for years." As mentioned, the court concluded that the Advances were not improper, but were "part of a larger business plan of [Thomas and Elizabeth], as a result of which the Plott Trusts and [the Business] profited." Again, Key may disagree with these findings, but they do not reflect any improper limitation on the relief that Key was permitted to pursue at trial.

29

### c. *Evidentiary rulings*

Key argues that the probate court improperly excluded expert testimony concerning the loss in value to the Business. But that ruling was a logical corollary to the probate court's decision to leave that issue for later determination. As discussed above, that ruling was within the court's discretion.

Key claims that the probate court also prevented her from introducing evidence concerning events prior to the time period covered in the Accounting Trial, which improperly limited her proof of Tyler's misconduct. Key's citations to the record do not support the claim. The probate court was careful to state that it would not exclude evidence from earlier time periods that was relevant to the transactions at issue. The court explained that "we're going to focus on the acts in the accounting period, not on what [Tyler] did before, except to the extent it bears on what she did do during the accounting period." That was a perfectly sensible approach to considering whether Tyler breached her fiduciary duties during the time that she was a trustee. The court also permitted the introduction of evidence that Key argued was relevant to bad faith.

Most important, Key does not explain how any particular items of evidence that she claims the probate court improperly excluded would have made any difference to the outcome of the trial. A judgment may be reversed based upon evidentiary rulings only if those rulings resulted in a "miscarriage of justice." (Evid. Code, §§ 353, 354.) This means that erroneous rulings made a difference in the outcome. (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 282.) Key has not made such a showing.

**5.    The Probate Court Did Not Abuse Its Discretion in Awarding Attorney Fees**

In its Statement of Decision, the probate court found that Key "acted subjectively in bad faith" in connection with her objections to the accounting, and that some of her positions were "wholly unreasonable."  However, because Tyler made concessions at trial amounting to more than $500,000, the court did not find that Key's objections were " 'without reasonable cause.' "  The court therefore denied an award of attorney fees against Key under section 17211, subdivision (a).  The court reserved the issue of allocation of attorney fees against the Trust and/or the beneficiaries' respective interests in the Trust for later determination.

After briefing and argument, the probate ordered payment of Tyler's attorney fees from the Trust.  The court apportioned the fees differently for different time periods.  For the time period extending to six months after the issuance of the BDO report, the court apportioned the fees 15 percent against Tyler's interest in the Trust and the remaining 85 percent as an administrative expense of the Trust.  For the remaining time period through the briefing on Tyler's fee request, the court apportioned the fees 15 percent against Tyler's interest, 50 percent of the remaining 85 percent (or about 42 percent of the total) against Key's interest, and the remaining 42 percent against the Trust as a whole.  The probate court's fee order did not explain under what authority the court ordered the fees.

"Allowance of litigation expenses rests in the sound discretion of the trial court, whose ruling will not be disturbed on appeal absent an abuse."  (*Whittlesey v. Aiello* (2002) 104

Cal.App.4th 1221, 1230 (*Whittlesey*).) We find no abuse of discretion.

Key argues that, in the absence of any authority for the attorney fee award in a statute or trust provision, the probate court's award is unauthorized and must be reversed. Key claims that, because the probate court rejected section 17211 as a basis for the fee award and did not cite any other statutory authority, the award lacks legal support.

This argument ignores the probate court's "broad equitable powers over the trusts within its jurisdiction." (*Hollaway v. Edwards* (1998) 68 Cal.App.4th 94, 99 (*Hollaway*).) "[W]hen a trust beneficiary instigates an unfounded proceeding against the trust in bad faith, a probate court has the equitable power to charge the reasonable and necessary fees incurred by the trustee in opposing the proceeding against that beneficiary's share of the trust estate." (*Rudnick v. Rudnick* (2009) 179 Cal.App.4th 1328, 1335; accord, *Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 183.) The " 'underlying principle' " that guides the court in deciding whether to allow payment of attorney fees incident to litigation out of a trust estate is whether the litigation benefited the trust. (*Whittlesey, supra,* 104 Cal.App.4th at p. 1230.)

Key argues that Tyler's representation in the Accounting Trial did not benefit the Trust, but benefited only Tyler personally. Key cites language in *Whittlesey* stating that "litigation seeking to remove or surcharge a trustee for mismanagement of trust assets would not warrant the trustee to hire counsel at the expense of the trust. Such litigation would be for the benefit of the trustee, not the trust." (*Whittlesey, supra,* 104 Cal.App.4th at p. 1227.)

32

However, that language in *Whittlesey* was dicta. *Whittlesey* did not concern the defense of a lawsuit seeking to surcharge a trustee, but rather the unsuccessful defense of a trust amendment that changed the allocation of trust benefits. (*Whittlesey, supra,* 104 Cal.App.4th at p. 1227.) Other cases have held that the defense of a trustee from charges of malfeasance may benefit a trust by settling questions about the trustee's conduct. (See *Hollaway, supra,* 68 Cal.App.4th at pp. 99–100 [defense of a trustee benefited the trust as well as the trustee by "eliminating charges raising serious questions about whether [the trustee] had and could continue to administer the trust properly"]; *Powell v. Tagami* (2018) 26 Cal.App.5th 219, 237 [same].) Settling questions about the propriety of trust administration can benefit the trust whether or not the challenged trustee is currently serving in that capacity.

In *People ex rel. Harris v. Shine* (2017) 16 Cal.App.5th 524, the court summarized cases that approved or denied attorney fees charged to a trust. The court noted that courts had awarded fees to a trustee's attorneys for successful defense "against a petition to remove or surcharge the trustee," and had denied fees where such a defense was unsuccessful. (*Id.* at pp. 534–535.) The court also noted that, where results of a proceeding were mixed, courts have based a decision to award fees based upon a trustee's overall success or have apportioned fees according to the trustee's success. (*Id.* at p. 535.)

Here, Tyler was entirely successful in defending against Key's allegations of misconduct and in defeating Key's requests for penalties. The probate court also found that, although Key had reasonable cause to pursue her objections to the accounting, she "acted subjectively in bad faith in connection with her

33

objections to the Accounting, including in her relentless pursuit of this litigation both before and at trial."  The court's apportionment of the attorney fee award to the various beneficiary interests in the Trust—including the portions charged against the separate interests of Tyler and Key—apparently reflected the probate court's assessment of individual responsibility for the litigation that generated the attorney fees. The court acted within its discretion in apportioning the fees in this matter.[13]

---

[13] Key argues that the probate court erred in ordering immediate payment of the fees despite Key's appeal pursuant to its authority to prevent "injury or loss" under section 1310, subdivision (b).  In light of our decision affirming the attorney fee award, the argument is moot.  (See *East Bay Regional Park Dist. v. Griffin* (2016) 2 Cal.App.5th 734, 744 [where an order under section 1310, subdivision (b) grants relief "identical to that of the underlying order on appeal, the statute effectively deprives an appellant of his or her right to appeal altogether"].)

## DISPOSITION

The probate court's order is affirmed.  Respondent Tyler is entitled to her costs on appeal.

NOT TO BE PUBLISHED.


                                        LUI, P. J.

We concur:



ASHMANN-GERST, J.



HOFFSTADT, J.