Filed 3/25/21  P. v. Walker CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B306499 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA010664) |
| v. | |
| DARRYL WALKER, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Steven D. Blades, Judge.  Affirmed.

Richard D. Miggins, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles S. Lee and Stephanie C. Santoro, Deputy Attorneys General, for Plaintiff and Respondent.

* * * * * *

Darryl Walker (defendant) appeals the trial court's summary denial of his petition for resentencing under Penal Code section 1170.95.[1]  Because his jury was not instructed on either of the theories of liability invalidated by section 1170.95, we affirm the summary denial of his petition for relief.

## FACTS AND PROCEDURAL BACKGROUND

I.     Facts[2]

### A.     The underlying crime

In May 1991, defendant picked up Quintin Holmes (Holmes) at his aunt's house.  Three days later, Holmes's body was found.  Holmes had died from strangulation, four stab wounds and 32 instances of blunt force trauma from what looked to be a hammer.  A few weeks earlier, defendant had borrowed a hammer from his girlfriend's mother.  Holmes's blood was also found in the home where defendant rented a room.  After the incident, defendant told someone he "had to kill a guy once."

### B.     Prosecution, conviction and appeal

In the operative pleading, the People charged defendant with murder (§ 187, subd. (a)), and further alleged that he personally used two dangerous or deadly weapons—namely, a knife and a hammer (§ 12022, subd. (b)).  A jury found defendant guilty of second degree murder, but found the weapon allegations not true.

The trial court sentenced defendant to prison for 18 years

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

[2]     We draw these facts from our prior, unpublished appellate opinion affirming defendant's conviction.  (*People v. Walker* (Dec. 27, 1995, B088809) [nonpub. opn.].)

2

to life, comprised of 15 years to life for second degree murder plus three years for serving three prior prison sentences.

Defendant appealed his conviction and, in an unpublished opinion, we affirmed his conviction and sentence.

## II.    Procedural Background

On February 28, 2019, defendant filed a petition seeking resentencing under section 1170.95. The People opposed the petition on constitutional grounds and on the merits. After appointing counsel for defendant and entertaining a further round of briefing, the trial court on June 17, 2020, denied defendant's petition in part on the ground that his jury had not been instructed on any of the legal theories invalidated by section 1170.95.

Defendant timely appealed this denial.

## DISCUSSION

Defendant argues that the trial court erred in summarily denying his section 1170.95 petition. Because the trial court's reason for summarily denying relief that is challenged on appeal turns on questions of statutory construction and the application of law to undisputed facts, our review of that reason is de novo. (*People v. Blackburn* (2015) 61 Cal.4th 1113, 1123; *Martinez v. Brownco Construction Co.* (2013) 56 Cal.4th 1014, 1018.)

A person filing a petition under section 1170.95 is entitled to the appointment of counsel, the opportunity for further briefing and a hearing if, in his petition, he "makes a prima facie showing that he . . . is entitled to relief" under that section. (§ 1170.95, subds. (c) & (d); *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1139-1140, review granted Mar. 18, 2020, S260598 (*Lewis*); *People v. Verdugo* (2020) 44 Cal.App.5th 320, 330, review granted Mar. 18, 2020, S260493 (*Verdugo*).) A person is entitled to relief

3

under section 1170.95 if, as relevant here, (1) "[a] complaint, information, or indictment was filed against [him] that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine," (2) he "was convicted of . . . second degree murder following a trial," and (3) he "could not be convicted of . . . second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a).)  A "'prima facie showing is one that is sufficient to support the position of the party in question.'" (*Lewis*, at p. 1137, quoting *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 851.)

Where a defendant in his petition alleges each element necessary to make out a prima facie case for relief under section 1170.95, a trial court evaluating whether a defendant has made a prima facie showing in a section 1170.95 petition is not required to accept those allegations at face value and may also examine the record of conviction. (*Lewis*, *supra*, 43 Cal.App.5th at p. 1138; *Verdugo*, *supra*, 44 Cal.App.5th at pp. 329-330; *People v. Tarkington* (2020) 49 Cal.App.5th 892, 899-900, 908-909, review granted Aug. 12, 2020, S263219 (*Tarkington*); *People v. Drayton* (2020) 47 Cal.App.5th 965, 968 (*Drayton*); *People v. Edwards* (2020) 48 Cal.App.5th 666, 673-674, review granted July 8, 2020, S262481 (*Edwards*); *People v. Torres* (2020) 46 Cal.App.5th 1168, 1178, review granted June 24, 2020, S262011 (*Torres*).)  However, the contents of the record of conviction defeat a defendant's prima facie showing only when the record "show[s] *as a matter of law* that the petitioner is not eligible for relief." (*Lewis*, at p. 1138, italics added; *Verdugo*, at p. 333; *Torres*, at p. 1177; *Drayton*, at p. 968; see also *People v. Cornelius* (2020) 44 Cal.App.5th 54, 58,

4

review granted Mar. 18, 2020, S260410 (*Cornelius*) [record must show defendant is "indisputably ineligible for relief"].)

Here, the trial court correctly concluded that defendant did not make out a prima facie case for relief because the record of conviction establishes, as a matter of law, that he is not eligible for relief. A defendant is ineligible for relief under section 1170.95 as a matter of law where "the jury was not instructed on a natural and probable consequences or felony-murder theory of liability." (*People v. Smith* (2020) 49 Cal.App.5th 85, 92, fn. 5, review granted May 15, 2020, S262835.) The sole theory of liability presented to the jury in defendant's case was the theory that he was the actual killer; the jury was never instructed on the theories of liability through direct aiding and abetting, through felony murder or through aiding and abetting a lesser crime the natural and probable consequences of which was the murder.

Defendant resists this conclusion with three arguments.

First, he argues that the trial court erred in going beyond the face of his petition and by relying on the factual summary contained in our prior appellate opinion because the prior appellate opinion improperly viewed the facts in the light most favorable to the murder conviction. In the same vein, he adds that section 1170.95's status as a "special proceeding" requires strict adherence to the procedures set forth in that statute. In so arguing, defendant is effectively asserting that *Lewis*, *Verdugo*, *Cornelius*, *Drayton*, *Edwards*, *Torres* and *Tarkington* are "wrongly decided." Although our Supreme Court has granted review in *Lewis*, *Verdugo, Cornelius*, *Edwards*, *Torres* and *Tarkington*, we continue to find them persuasive unless and until the Supreme Court rules otherwise.

5

Second, defendant more narrowly contends that, even if a trial court may consider *some* parts of the record of conviction in evaluating eligibility for relief under section 1170.95, it may not consider the facts set forth in a prior appellate decision. We need not confront the totality of this argument because the summary denial of defendant's section 1170.95 petition in this case rests not on the *facts regarding the offense* that are recited in the prior appellate decision, but rather on the *facts setting forth the jury's findings* recited in that decision—namely, the fact that the jury found defendant guilty of second degree murder and, by virtue of the jury instructions, necessarily did so on the basis of finding him to be the actual killer. *Those* latter facts are a proper subject of judicial notice as an "accurate[]" "reflect[ion]" of what is in "the trial record" and are properly admitted for "the nonhearsay purpose of determining the basis of the conviction." (*People v. Woodell* (1998) 17 Cal.4th 448, 456-457, 459-461; *Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort* (2001) 91 Cal.App.4th 875, 885 ["an appellate opinion can be admitted to prove . . . that the court made orders, factual findings, judgments and conclusions of law"]; *People v. Franklin* (2016) 63 Cal.4th 261, 280 [same]; *Kilroy v. State of California* (2004) 119 Cal.App.4th 140, 147 ["findings of fact" may be judicially noticed]; *Sosinsky v. Grant* (1992) 6 Cal.App.4th 1548, 1565 ["it may be proper to take judicial notice that [a trial judge] did in fact make [a] particular finding" of fact "after hearing a factual dispute"], italics omitted.)

Lastly, defendant argued to the trial court that the jury was, in fact, instructed on the natural and probable consequences theory because the jury instruction defining murder defined "implied" "malice" as existing when a defendant intentionally

commits an act, "[t]he *natural consequences* of the act are dangerous to human life," and "[t]he act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life."  (Italics added.)  We reject defendant's contention that because the court's definition of implied malice used the phrase "natural consequences" that the jury was *implicitly* instructed on a natural and probable consequences theory:  "The 'natural consequences' language in the instruction for second degree murder does not transform [a defendant's] conviction into one for murder under the natural and probable consequences doctrine within the meaning of section 1170.95." (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1059, review granted Sept. 23, 2020, S263939.)  In the implied malice instruction, the phrase "natural and probable consequences" is used to hold a defendant liable for the "natural and probable consequences" of his own act or failure to act; by contrast, the "natural and probable consequences" theory is a theory of vicarious liability that is used to hold a defendant liable for *another person's* criminal conduct as long as the other person's criminal conduct is a "natural and probable consequence" of what defendant agreed to aid and abet—and, critically, irrespective of the defendant's own intent regarding that further criminal conduct.  As *Soto* noted, these are "distinctly different concepts" (*id.* at pp. 1056-1057), and, like *Soto*, we decline to equate them.

**DISPOSITION**

The order is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.

HOFFSTADT


We concur:


_____, P. J.

LUI


_____, J.

CHAVEZ


8