Filed 1/4/22  P. v. Mariscal CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>GERARDO GARCIA MARISCAL,<br><br>    Defendant and Appellant. | 2d Crim. No. B311259<br>(Super. Ct. No. 2010028681)<br>(Ventura County)<br><br>OPINION FOLLOWING REHEARING |

Gerardo Garcia Mariscal appeals from the trial court's denial of his petition for resentencing (Pen. Code, § 1170.95).[1]  He contends there was insufficient evidence he acted with reckless indifference to human life.  We affirm.

## FACTUAL AND PROCEDURAL HISTORY

### *Murder of Uriel Bucio*

---

[1] Subsequent undesignated statutory references are to the Penal Code.

In December 2008, Mariscal recruited Miguel Gonzales Pena to rob Uriel Bucio at the car dealership where Bucio worked. Mariscal provided Pena with a loaded handgun. Pena told Mariscal, "[I]f he tries to get away, he dies." Pena shot and killed Bucio during the robbery.

### *2010 Robbery*

In July 2010, Mariscal, Pena, and three others, at gunpoint, robbed a group raising funds at a barbeque.

### *Guilty plea and sentence*

Mariscal pled guilty to first degree felony murder in the commission of a robbery. (§§ 187, subd. (a), 189, subd. (a), 190.2, subd. (a)(17)(A).) He admitted furnishing a firearm to aid and abet the robbery. (§ 12022.4.) He also pled guilty to the 2010 second degree robbery and admitted he personally used a firearm in its commission. (§§ 211, 12022.53, subd. (b).) The trial court sentenced Mariscal to 26 years to life for the murder and a concurrent term of 15 years for the 2010 robbery.

Following a court trial, Pena was convicted of the 2010 robbery (§ 211) and first degree murder of Bucio (§§ 187, subd. (a), 189, subd. (a)) with the special circumstance that it was committed in the commission of a robbery (§ 190.2, subd. (a)(17)(A)), and firearm allegations as to both counts (§ 12022.53, subds. (b) & (d)). We affirmed the judgment against Pena. (*People v. Pena* (Oct. 25, 2016, B266438) [nonpub. opn.].)

### *Section 1170.95 proceedings*

In 2020, Mariscal filed a petition for resentencing. The court appointed counsel, issued an order to show cause,

2

received briefing, and conducted a contested evidentiary hearing. (§ 1170.95, subds. (c) & (d)(1).)

At the section 1170.95 hearing, the parties agreed that the court could consider the "record of conviction" in Pena's case, including the transcripts and exhibits of his court trial. Mariscal unsuccessfully objected to Pena's statements to an informant on hearsay and confrontation grounds.

The court considered the reporter's transcript and exhibits from Pena's trial, including transcripts of Pena's and Mariscal's conversations with the informant. Three witnesses testified at the section 1170.95 hearing: the informant, the interpreter who translated recordings of the conversations with the informant from Spanish into English, and a law enforcement investigator.

### *Mariscal's statements to informant*

At the section 1170.95 hearing, the informant authenticated the audio recordings of his conversations with Mariscal, the interpreter authenticated the transcript, and both were admitted into evidence.

When the informant questioned Mariscal about the 2010 robbery, he admitted he wore a ski mask, "threw the people to the ground," and told a victim "hands up."

The informant also questioned Mariscal about Bucio's murder. Mariscal's statements to the informant included the following:

Mariscal believed "the dude from the dealer" would possess $30,000 to $50,000 in cash to buy cars for the dealership. Mariscal "set the deal up" for Pena and recruited him to rob the victim. The victim and his son knew Mariscal "really well." Mariscal provided Pena with a small semiautomatic handgun

3

with about six .380 caliber bullets.

Mariscal told Pena not to kill Bucio. Pena told Mariscal, "[I]f he tries to get away, he dies."

Mariscal went together with Pena and waited for him. Pena wore a "a piece of cloth" as a mask, glasses, and gloves.

Pena asked the victim for the money and searched for it. He took "$1,000 pesos" from the victim. Pena killed the victim "with just one shot" from the gun Mariscal lent him. Pena killed Bucio in front of his son, who Mariscal believed was eight or nine years old. Mariscal "passed" the gun to a "dude . . . from La Colonia" in exchange for "some rims."

The transcript showed that Mariscal giggled and laughed when he described the crime, including during his statement that Bucio's son was present during the murder.

When the informant told Mariscal another person had told him about the murder, Mariscal offered to "bump" and "remove" that person.

### Pena's statements to informant

The exhibits from Pena's trial included Pena's statements to the informant. They included the following:

Pena took $5,000 from Bucio. Bucio told Pena, "I know who you are." After Bucio recognized Pena, he "didn't have any choice" but to shoot him.

Mariscal waited for Pena while Pena "did the job." When a policeman and a fireman went by, Mariscal gave Pena "the heads up to go to [Pena's] truck."

Pena did not know he killed Bucio until Mariscal told him the next day. Pena gave the gun back to Mariscal.

### Other evidence

4

At the section 1170.95 hearing, the informant testified that he participated with Mariscal and others in the 2010 robbery. They expected a large amount of money would be present. Mariscal and the others carried guns and wore masks.

District Attorney Investigator Adam Wittkins testified that he investigated the murder when he was an Oxnard police detective. He testified, without objection, that the homicide occurred at a car lot, and the victim's son climbed through a window at the business to phone his mother and tell her of the shooting. He believed that a .380 caliber shell casing was found at the scene. Wittkins reviewed records that showed that Mariscal and Pena exchanged calls minutes before the murder from locations near the dealership. The cell phone records were admitted into evidence.

Although the parties agreed the court could consider Pena's record of conviction, the record of the section 1170.95 proceedings does not show whether the court considered the transcript of Pena and Mariscal's joint preliminary hearing. The preliminary hearing was primarily a "hearsay prelim" at which law enforcement officers related witness statements (§ 872, subd. (b)), including the following: Uriel Bucio worked at a used car dealership. He was often accompanied there by his 10-year-old son. Mariscal frequently "hung around" the dealership. Pena pointed the handgun at Bucio and ordered him and his son to lie on the ground. Pena looked through Bucio's truck.

The preliminary hearing also included nonhearsay evidence. This included identification of "Flaco" (the name Mariscal used to identify his codefendant) as Pena. It also included the medical examiner's testimony that Bucio died of a single gunshot wound, consistent with either a .357 or .380

5

caliber bullet.

The record does not indicate whether the court considered our opinion in *People v. Pena*, *supra*, B266438. The opinion included information about the 2010 robbery, including that Mariscal and Pena "'threw' the group onto the ground and threatened them with guns while [another participant] took two suitcases he thought would contain half a million dollars."

### *Denial of petition*

The trial court denied the section 1170.95 petition. The court found that Mariscal was a major participant in the murder and acted with reckless indifference to human life.

The court discussed the factors of *People v. Banks* (2015) 61 Cal.4th 788, 803 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522, 618-622 (*Clark*) to determine whether Mariscal acted with reckless indifference to human life. The court concluded that Mariscal was the "mastermind" who initiated the robbery, provided the loaded gun used to kill Bucio, and knew Pena was willing to use the gun if Bucio attempted to escape. The court noted that Mariscal was not physically present during the shooting and was not in a position to stop it. But the court found that Mariscal did not assist the victim although the cell phone records showed he was in the area, and Pena's statement put him just outside the car lot and in a position to monitor and give guidance regarding a passing police car. The court found that the duration of the crime was a "push"—although the victim did not immediately turn over money and Pena searched the truck, it was not a "takeover hostage" situation and "wasn't a particularly long crime."

### DISCUSSION

In 2018, the Legislature enacted Senate Bill No. 1437

6

(Sen. Bill 1437), which redefined "malice" and limited application of the felony murder rule. (Stats. 2018, ch. 1015, §§ 2, 3, amending Pen. Code, §§ 188, 189.) Sen. Bill 1437 also added section 1170.95, which provides for a petition to vacate a murder conviction where the defendant could not be convicted of murder based on the amendments to sections 188 and 189. (Stats. 2018, ch. 1015, § 4.)

Sen. Bill 1437 narrowed the classes of persons liable for felony murder to "the actual killer," those who aided and abetted the killer with intent to kill, and "a major participant in the underlying felony [who] acted with reckless indifference to human life." (§ 189, subd. (e).)

"Reckless indifference to human life 'requires the defendant be "*subjectively* aware that [their] participation in the felony involved a grave risk of death."' [Citations.]" (*Banks*, *supra*, 61 Cal.4th at p. 807.) Reckless indifference "encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions." (*Clark*, *supra*, 63 Cal.4th at p. 617.)

In *Clark*, our Supreme Court listed factors to consider to determine whether a participant acted with reckless indifference to human life: (1) knowledge that a gun will be used, defendant's own use of weapons, and the number of weapons; (2) the defendant's physical presence at the crime and opportunities to restrain the crime and/or aid the victim; (3) the duration of the crime; (4) the defendant's knowledge of a cohort's likelihood of killing; and (5) the defendant's efforts to minimize the risks of violence. (*Clark*, *supra*, 63 Cal.4th at pp. 618-622.) The above factors are neither individually necessary nor sufficient. (*Id.* at p.

618.) The totality of the circumstances must be considered to determine whether Mariscal acted with reckless indifference to human life. (*In re Scoggins* (2020) 9 Cal.5th 667, 677.)

At the evidentiary hearing, the trial court acts as an independent fact finder. We review the trial court's findings for substantial evidence. "[W]e review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. . . . We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence." (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)

Substantial evidence of two of the *Clark* factors clearly supports the trial court's finding of reckless indifference. Mariscal knew a loaded gun would be used and provided it to Pena. He knew Pena planned to kill Bucio if he tried to escape. The trial court properly found that the duration of the crime was neutral. One factor weighs against a finding of reckless indifference: Mariscal claims he told Pena not to kill Bucio.

Substantial evidence supports the trial court's conclusion that Mariscal was not present at the shooting and could not have stopped it, but was close enough that he could have assisted Bucio. Mariscal's proximity was supported by cell phone records, Mariscal's statement that he went with Pena and waited for him, and his knowledge of details of the crime that Pena did not know.

Here, as in *People v. Williams* (2020) 57 Cal.App.5th 652, 664, "the superior court could reasonably infer he did not call for assistance or attempt to render aid to the victim who did

not die at the scene of the shooting. [Fn. omitted.]" This case is unlike *In re Taylor* (2019) 34 Cal.App.5th 543, 559, in which the defendant did not drive away from the gunshot victim until he knew that help was arriving.

Evidence of Mariscal's behavior after the murder also supports the finding of reckless indifference to human life, even if it would be insufficient standing alone. (*In re Taylor*, *supra*, 34 Cal.App.5th at p. 560.) Mariscal traded the murder weapon for rims for his car. He giggled and laughed when describing the crime, including during his statement that Bucio's young son was present during the murder. He later participated in another armed robbery, without changing the method to reduce the risk of more killings. (*People v. Douglas* (2020) 56 Cal.App.5th 1, 10-11.) And he offered to kill an individual he believed told the informant about the murder.

Mariscal does not dispute that he was a major participant in the robbery of Bucio. We nevertheless consider the major participant factors listed in *Banks*, *supra*, 61 Cal.4th 788, because they "'significantly overlap'" with the factors for reckless indifference to human life. (*Clark*, *supra*, 63 Cal.4th at pp. 614-615 ["'the greater the defendant's participation in the felony murder, the more likely that he acted with reckless indifference to human life'"].)

The major participant factors listed in *Banks* are: "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at

the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death?  What did the defendant do after lethal force was used?  No one of these considerations is necessary, nor is any one of them necessarily sufficient." (*Banks*, *supra*, 61 Cal.4th at p. 803, fn. omitted.)

Evidence of the *Banks* factors provides further support for the finding of reckless indifference here.  Mariscal was the "mastermind" of the robbery, recruited Pena to commit it, and provided the loaded murder weapon.  He knew Pena was willing to kill.  He was near the robbery but did nothing to assist the victim.  He laughed when describing the murder and participated in another armed robbery less than two years later.

Substantial evidence supports the trial court's determination that Mariscal acted with reckless indifference to human life.  We therefore affirm the denial of the petition for resentencing.

### Senate Bill No. 775

Mariscal petitioned this court for rehearing asserting that some of the evidence produced at the evidentiary hearing was inadmissible pursuant to the amendment to section 1170.95, subdivision (d)(3), effective January 1, 2022.  (Sen. Bill No. 775 (2021-2022 Reg. Sess.) Stats. 2021, ch. 551, § 2 (Sen. Bill 775).) He contends the amendment applies here as a clarification of existing law.  (*Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 244; *People v. Lee* (2018) 24 Cal.App.5th 50, 56-60; see Sen. Bill 775, § 1 (d).)  The Attorney General contends the changes are not retroactive and do not apply to this appeal. (*People v. DeHoyos* (2018) 4 Cal.5th 594, 601-603; see *In re Estrada* (1965) 63 Cal.2d 740.)  We decline to determine whether

new subdivision (d)(3) is retroactive because even if its new evidentiary rules are applied, overwhelming evidence supports the trial court's findings that Mariscal was a major participant and acted with reckless indifference to human life, beyond a reasonable doubt.

Sen. Bill 775 specifies the evidence that may be considered at a section 1170.95 hearing following issuance of an order to show cause. As amended, section 1170.95, subdivision (d)(3), provides in part: "The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion. However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule. The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens."

The most significant evidence supporting denial of the resentencing petition were Mariscal's statements to the informant, including that he recruited Pena to rob Bucio, gave Pena a loaded firearm, and knew Pena would kill Bucio if he tried to escape. The statements were admissible against Mariscal as admissions of a party. (Evid. Code, § 1220.) The "new or additional evidence" adduced from the informant and investigator who testified at the section 1170.95 hearing is also admissible, as is the nonhearsay testimony at the preliminary

11

hearing. (§ 1170.95, subd. (d)(3), as amended by Sen. Bill 775.) If the court considered hearsay from the preliminary hearing, it was largely cumulative to the other evidence.

The Attorney General contends that our opinion in *People v. Pena*, *supra*, B266438, is admissible for both its procedural history and factual summary. (But see *Kilroy v. State of California* (2004) 119 Cal.App.4th 140, 148.) We need not resolve that issue, or the effect of the parties' agreement that the court could consider Pena's record of conviction, because if the court considered the opinion, the facts it summarized are largely cumulative to other evidence.

Mariscal contends that Pena's statements to the informant are inadmissible against Mariscal because there was no showing that Pena was "unavailable as a witness" as required for the hearsay exception for declarations against interest. (Evid. Code, § 1230.) Sen. Bill 775 provides that the court may consider "evidence previously admitted at any prior hearing or trial that is admissible under current law," but does not explain how that would apply to evidence at the trial of a codefendant. We need not resolve that issue because even without Pena's statements to the informant, overwhelming admissible evidence supports denial of the section 1170.95 petition, beyond a reasonable doubt.

## DISPOSITION

The trial court's order denying Mariscal's petition for resentencing pursuant to section 1170.95, entered January 26, 2021, is affirmed.

NOT TO BE PUBLISHED.

TANGEMAN, J.

We concur:

GILBERT, P. J.          PERREN, J.

Derek D. Malan, Judge

Superior Court County of Ventura

_____

Mark D. Lenenberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Michael Katz, Deputy Attorneys General, for Plaintiff and Respondent.